## GOVE *vs.* RICHARDSON.

*If a dividing line be settled by parol agreement and actual location between the owners of adjoining tracts of land ; such location will be received as strong evidence of the accuracy of the line thus established; though it is not conclusive to prevent either party from shewing that it was settled erroneously.*

THIS was a writ of entry, in which the demandant claimed to recover seisin and possession of a tract of land, described in the writ as part of lot numbered 226, and bounded as follows ;— " beginning on the easterly line of said lot, at the distance of 160 rods from the northeast corner of said lot ; thence west-north-west 67 rods ; thence southerly, at right angles, about five rods to land in possession of said *Gove* ; thence easterly, parallel with the first mentioned line, 67 rods to the easterly line of said lot ; thence northerly, about five rods, to the bounds first mentioned."

At the trial of this cause, upon the general issue, before *Weston J.* the demandant gave in evidence a deed from one *Hunt* to *Joseph Blake,* dated *June* 20, 1809 ; and another from *Blake* to himself, dated *January* 1,1810 ; describing a tract of land as follows ;—" being part of lot numbered 226, beginning at the south-westerly corner of said lot, thence running northerly about 160 rods to land belonging to *Jesse Eaton's* heirs ; thence easterly about 67 rods to land belonging to *Daniel Wing*; thence southerly about 160 rods to the land of *J. Bean* ; thence westerly about 67 rods to the bounds first mentioned." It appeared that the demandant's lot was more than 160 rods in length, exclusive of the demanded premises.

The demandant also read a deed from one *Stevens* to *Jesse Eaton,* ancestor of said heirs, dated *March* 21, 1787, conveying to him " 50 acres of land, part of said lot numbered 226 ; beginning at the *northeast* corner of said lot, and running south-south-west 160 poles ; thence running west-north-west 50 poles to a stake and stones ; thence north-north-east 160 poles to a stake and stones ; thence east-south-east 50 poles to the bounds first mentioned." He then offered in evidence a plan and survey,

made by a surveyor appointed by order of court in this action; from whose running, and from the testimony of the chainmen who accompanied him, it appeared that measuring from the northeast corner of the lot, as shewn by *Jesse Dorman,* a witness, the 160 rods would not include the demanded premises in the lot conveyed to *Jesse Eaton,* under whom the tenant claimed.

The tenant then introduced several witnesses, who testified that there was an old line across the lot as many as twenty-nine years ago, consisting of trees plainly spotted, which was called the southerly line of the *Eaton* lot; but when or by whom it was made, they did not know. This testimony, though objected to, the judge admitted, as tending to prove an original location of *Eaton's* lot, when it was conveyed to him by *Stevens.* The tenant further proved, by two commissioners appointed by the Probate Court to divide the lot among the heirs of *Jesse Eaton,* that nineteen years ago they measured for that purpose 160 rods southerly from the northeast corner of the lot numbered 226, and fixed the south line where the fence now is, to which the tenant holds. They testified that they measured as exact as they could; making no allowance, except to bring it to horizontal measure. At the time of this survey and admeasurement, there was no one to represent the interest of the former owner of the lot, now belonging to the demandant; and this evidence was therefore objected to. But as there was evidence tending to prove a subsequent acquiescence in the line by them made, the judge admitted the testimony.

It appeared that when the commissioners from the Probate Court measured and divided the land, there was a monument then existing at the northeast corner of the lot, from which they measured. That monument is since gone; but the witness *Dorman,* before mentioned, testified that the point from which the admeasurement was made by order of court, was at, or very near, and as he believed, within five or six feet of the same spot, he having before and ever since that time lived in that neighborhood. It further appeared that a fence had been made for many years in the line fixed by the commissioners, which the demandant pointed out to two or three witnesses, at distinct periods, as

his line. And if this was the dividing line, the land in dispute would belong to the tenant.

The judge instructed the jury that the length of the tenant's lot must be limited to 160 rods, exact measure ; unless they were satisfied, from the evidence, that in 1787, when *Stevens* sold to *Eaton*, under whom the tenant claimed, the lot was then located, and the lines and corners marked by the parties. If so, and they were satisfied that the old line across the lot, to which the witnesses testified, was the line thus established ; although, in consequence of the liberal admeasurement of that day, the lot would somewhat exceed 160 rods, exact measure, yet the demandant was not entitled to their verdict.

And he further instructed them that if there was no original location, or if the lines of that location could not be ascertained; still, if, from the evidence, it appeared to them that the dividing line had been long fixed and acquiesced in by the parties, it ought not to be disturbed, unless it clearly appeared to be erroneous;—that if the demandant, and those under whom he claimed, were satisfied to adopt the admeasurement of the commissioners, and to fix the line accordingly, it was competent for them so to do ; although they were not represented at the time of that admeasurement ;—that both the commissioners had testified that that line was exactly 160 rods, by actual admeasurement, from the the monument at the northeast corner then in existence ;—but that from a variety of causes there might be slight variations in different surveys and admeasurements of that distance;—that it was for them to consider whether the northeast corner could now be fixed with the same certainty as formerly; and that they would not be justified in disturbing the line recognized by the parties ; unless it satisfactorily appeared to them to be more than 160 rods from the true point of beginning. If it did, and no original location was proved or indentified, their verdict ought to be for the demandant. Under this direction, the jury returned a verdict for the tenant ; the points raised at the trial being reserved by the judge, for the opinion of the court.

*Allen*, for the demandant.

*R. Williams*, for the tenant.

The opinion of the court was read at the ensuing *September* term in this county, as drawn up by

WESTON J. It has been contended that the demandant's declaration, having excluded all the land to which the tenant's title extended, he should have disclaimed generally ; and that he can not defend any part of the premises demanded, without, claiming beyond the limits to which his original title would carry him. If however the tenant's land might, upon a just construction, extend to a greater distance than one hundred and sixty rods, exact measurement, from the northeast corner of lot number 226, as his counsel insists that it does, he could not disclaim, without abandoning that which he has a right to hold. It must further be considered, that although the land demanded is represented as beginning one hundred and sixty rods from the northeast corner of lot number 226, that is not the only description by which it is to be identified and located ; it is also described as adjoining land in possession of the demandant. Now whatever uncertainty there may be in fixing the northeast corner of number 226, it appears from the evidence, that the respective possessions of the parties have been for many years plainly indicated by a line fence. The tenant cannot therefore disclaim, without giving up land, which he has long possessed, and to which he contends he has a just title. If his title to the land in dispute has been legally sustained by the evidence, his plea is fully justified ; and we can perceive no well founded objection to the consideration of the cause on its merits, upon the pleadings as they stand.

That part of the tenant's testimony, by which it was proved that as many as twenty nine years ago, there was an old line across the lot, consisting of trees plainly spotted, which was called the southerly line of the *Eaton* lot, now owned by the tenant, and which, if the true line, would give him the demanded premises,was objected to as inadmissible. It was, however,in our opinion legally received, as tending to show an original location. By whom that line was made did not appear. Twenty nine years prior to the trial, it was an old line, and it was proper for the

Gove v. Richardson

jury to consider how far it tended to prove that it was a line marked and established, in conformity with the deed, by t e parties in interest in 1787, when *Stevens* conveyed to *Eaton*. If such was the fact, the tenant's title was legally maintained. In that deed, no terminating monument southerly is designated on one of the side lines ; but on the other there is, namely, a stake and stones ; and by the courses stated, the end lines were to be parallel with each other. If the monument, thus given on one of the side lines, could now be ascertained, the *Eaton* lot would clearly extend thus far. And if the jury were satisfied that the old line was made and established by the parties at the time, it was competent for them to presume that it coincided with the monument referred to in the deed.

The whole lot was supposed to be three hundred and twenty rods in length. In the division, *Eaton* had one hundred and sixty rods on the north, and by the deed to the demandant which is in the case, his land on the south is described as extending one hundred and sixty rods to the land of *Eaton's* heirs. It is apparent then that the lot was intended to be divided into equal parts ; and it appears that the demandant has more than one hundred and sixty rods, exclusive of the demanded premises. It is true that the demandant has made out a title to that part of the lot, which was not granted to *Eaton*. If he therefore had less than half, the demandant must have more. But if there was an actual survey and location, at the time the deed was executed to *Eaton*, it was probably made according to the liberal admeasurement of that early period. All these circumstances were properly referred to the consideration of the jury.

The testimony of the commissioners, appointed by the court of probate to divide the *Eaton* lot among his heirs, is objected to. It was not introduced or received upon the ground, that what they did was binding upon the demandant. It was to prove that, according to their admeasurement, which they testify they made with as much accuracy as they could, it was exactly one hundred and sixty rods from the monument then in existence at the north-east corner of lot number 226, to the place where the line fence is now established. We are not aware of any legal principle,

which would exclude this testimony.   They were competent
witnesses; and the fact to which they testified had a direct bear-
ing upon the question in issue.   If *Dorman,* a witness for the
demandant, who pointed out to the surveyor, appointed by order
of court, the place at or near which, according to his recollec-
tion, the monument at the northeast corner stood, was under no
mistake, there may have been some error, either in the admeas-
urement or recollection of the commissioners ; but it was the
province of the jury to settle the facts, from all the testimony in
the case.   It was in evidence that the demandant did, on several
occasions, point out the fence placed in the line to which the
commissioners measured, as the dividing line between him and
the tenant.

The jury were instructed that if there was no original location,
or if it could not now be ascertained ; yet however, if the par-
ties had fixed a dividing line between them, in which they had
long acquiesced, it ought not to be disturbed, unless it clearly
appeared to be erroneous.   The demandant was not represented
in the proceedings by the commissioners ; but as they were dis-
interested and under oath, he might be disposed to adopt their
admeasurement, and if so, that the line thus ascertained ought
to be considered as the true one, unless the jury were fully satis-
fied, from the evidence, that it was more than one hundred and
sixty rods from the northeast corner of the lot ; and it was for
them to consider, whether that corner could now be ascertained
with so much accuracy as formerly, while the monument then
was in existence.

A dividing line, between owners of adjoining tracts, may be
settled by them under a misapprehension or mistake, which, if
clearly shown, may be corrected ; but unless this act of the
parties be regarded as strong evidence of the accuracy of the
line thus amicably established, a fruitful source of litigation will
be left open, of which one or both the parties may avail them-
selves, when under the influence of less friendly feelings.   Sur-
veyors of equal skill and judgment may differ a little in their
admeasurement of long distances, especially through woods, and
over ground presenting a broken and uneven surface.   Slight, if

not considerable variances, might be occasioned by so many circumstances, that it is hardly to be expected, in such cases, that any two admeasurements would agree to a single foot. And this is an additional reason why a line fixed by the parties, ascertained by an admeasurement from a distant point, should not be lightly disturbed.

In the opinion of the court, the jury were properly directed by the judge, who presided at the trial ; and the tenant is entitled to                                            *Judgment on the verdict.*