## FERDINAND E. BAHNEMAN v. WILLIAM FRITCHE AND OTHERS.[1]

December 10, 1920.

No. 21,996.

**Boundary—practical location—evidence.**

1. The evidence of a "practical location" of the boundary lines in dispute at the place where the court established them was sufficient to justify the court in adopting such lines as the true boundary lines.

**Theory of stipulation at trial cannot be changed on appeal.**

2. A stipulation made at the trial, which recognized that the location of the boundary lines still remained in dispute and was treated throughout the trial as merely establishing a survey made by a surveyor who was not present as a witness, cannot be given effect in this court as conclusively establishing that the lines located by such surveyor were the true boundary lines.

**Adverse possession — continuity of possession.**

3. The fact that a predecessor in title, who farmed and raised crops on the land, did not reside on it nor keep cattle on it for two years and hence did not use the land in dispute as a passageway for cattle during that period, did not break the continuity of possession. The finding that such possession was adverse is sustained by the evidence.

**Description of boundary lines not indefinite.**

4. The description of the location of the lines established as the boundary lines does not appear to be so indefinite that they cannot be located on the ground.

[1]Reported in 180 N. W. 215.

Action in the district court for Washington county to determine boundary lines. The case was tried before Searles, J., who made findings and ordered judgment in favor of defendants William Fritche and August Fritche. From an order denying his motion for judgment in favor of plaintiff or for a new trial, Ferdinand E. Bahneman appealed. Affirmed.

*W. H. Gillitt,* for appellant.

*Wilson & Thoreen,* for respondents.

TAYLOR, C.

This is an action to determine boundary lines. At the opening of the trial, plaintiff George Bahneman withdrew from the case, and plaintiff Ferdinand E. Bahneman dismissed the action as to all defendants other than William Fritche and August Fritche, Jr. The trial proceeded with Ferdinand E. Bahneman as sole plaintiff and William Fritche and August Fritche, Jr., as defendants.

All the lands in controversy are situated within section 17 of township 28 of range 20 in Washington county. The lines in dispute are: (1) The line marking the boundary between the east half and the west half of the northeast quarter of the section; (2) the line marking the north 66 rods of the boundary between the southeast quarter and the southwest quarter of the section. At the beginning of the trial Mr. Gillitt, as attorney for the plaintiff, and Mr. Thoreen, as attorney for the defendants, made an oral stipulation which was stated to the court by Mr. Gillitt and taken down by the reporter. Mr. Gillitt first stated that it was stipulated that plaintiff is the owner of the northeast quarter of the northeast quarter of the section, also of the west half of the southeast quarter of the northeast quarter, and also of the north half of the southeast quarter excepting a triangular tract in the southwest corner thereof 14 rods in width along the west line thereof; that defendant William Fritche is the owner of the west half of the northeast quarter of the section, and that defendant August Fritche, Jr., is the owner of the northeast quarter of the southwest quarter of the section and of the triangular tract above mentioned. In short they stipulated that plaintiff owned the government subdivisions on the east side of both

lines, that William Fritche owned the government subdivision on the west side of the first line and that August Fritche, Jr., owned the government subdivision on the west side of the second line and the land at the south end of that line. Mr. Gillitt then stated the remainder of the stipulation as follows:

"That in October, 1914, on the 10th to the 14th inclusive, F. J. Armstrong, admitted to be a competent civil engineer, made a survey and located the boundary line between the said lands of Ferdinand E. Bahneman, William Fritche and August Fritche, Jr.; that said survey—same being the line between the east half and the west half of said northeast quarter of section seventeen and between the north half of the southeast quarter and the northeast quarter of the southwest quarter of said section seventeen excepting said triangular tract; that said survey was made from known government monuments."

After the stipulation had been stated thus far, this followed:

"Mr. Gillitt: What further do you want in there, Mr. Thoreen?

Mr. Thoreen: Why, I believe that is all. That is all that I know of.

Mr. Gillitt: I presume we better state in that stipulation that there is a controversy between the plaintiff and the defendants as to what is the true boundary lines. The plat (plaintiff's Exhibit A) is offered in evidence as a part of the stipulation.

The Court: Is that the surveyor's map made by Armstrong?

Mr. Gillitt: This is the surveyor's map made by Armstrong. With that plaintiff rests."

The defendants then presented evidence to the effect that the lines claimed by them to be the true boundary lines had been recognized and acquiesced in as such by all the landowners concerned for more than 30 years. Aside from the stipulation all the evidence presented by either party was directed to this issue, and the evidence upon this issue fills 240 pages of the record. Plaintiff conceded that the lines in dispute were established on the ground more than 40 years ago and that the location at which they were thus established has been recognized as their true location ever since, but claimed that these old lines substantially coincided with the lines run by Armstrong, while defendants claimed that these old lines lay east of the lines run by Armstrong. It seems

to be undisputed that for many years the first line had been marked by an iron stake at its north end, by a stone monument at its south end, by fence posts and fences along a part of the line, and by a line of sod between the two fields along the remainder of it. Defendants and their witnesses testified that Armstrong located the north end of this line at a point 12 inches west of the location of the old stake, and that he moved the stone monument at the south end of the line to a point two and one-half or three feet west of its original location. The trial court found as a fact that the true line was where defendants claimed that the old line had been located.

The second line is marked by a narrow lane extending from the barnyard of August Fritche, Jr., near the north end of the line, to his pasture lying south of the south end of the line. It is undisputed that fences have been maintained on both sides of this lane for many years. Plaintiff claimed that the west fence was built on the boundary line some 40 or 50 years ago and that the east fence was built subsequently on his land with his consent by one of Fritche's predecessors in title named Brunner, now deceased. Defendants claimed that the original fence built on the line is the east fence and that Brunner subsequently built the west fence on his own land. The court established the boundary along the line marked by the east fence and found in substance that the landowners had occupied up to this line and had recognized and acquiesced in it as the true line for more than 15 years prior to the beginning of the action. The Armstrong line does not vary much from the line of the west fence, but runs a little east of it at its north end and a little west of it at its south end.

Both parties quote from section 1083 of Dunnell's Digest the statement of the three ways in which a boundary may be established by a "practical location" of the line, and agree that a boundary line relied upon and acquiesced in for a sufficient length of time to bar a right of action under the statute of limitations, is established as the true line under the doctrine of "practical location." The evidence tending to show a practical location of the lines in dispute at the place where the court located them is amply sufficient to sustain the findings of the court to the effect that such lines are the true boundary lines.

Plaintiff's principal contention in this court is that the stipulation established the lines located by Armstrong as the boundary lines between the lands of the parties, and bars defendants from claiming that the boundary lines are not where Armstrong placed them.

No such contention was made or suggested at the trial. Armstrong was not present as a witness, and both parties treated the stipulation throughout the trial as merely establishing the fact that he had made a survey and the location where he had placed the boundary lines in that survey. There is no suggestion anywhere that either party understood that the stipulation adopted the lines located by Armstrong as the true boundary lines. If the stipulation made the Armstrong lines the boundary lines, nothing remained to litigate, for the location of these lines was marked on the ground by stakes, was known to all parties and was never in dispute. Even if the stipulation were susceptible of the construction now contended for by plaintiff, which is more than doubtful as it recognized that the location of the boundary lines still remained in dispute, plaintiff cannot thus shift his position. The case must be determined in this court in accordance with the theory on which it was tried in the court below. 1 Dunnell, Minn. Dig. §§ 401-409.

Plaintiff urged that Brunner's possession and occupancy of the land now owned by August Fritche, Jr., is not connected with Fritche's possession and occupancy, for the reason that one Stabenow, who owned the land after Brunner, had not resided upon it for two years. But Stabenow, although residing elsewhere, farmed the land and raised crops on it during these two years, and the fact that he had no cattle on it and hence did not use the lane as a passageway for cattle did not interrupt the continuity of the possession.

Plaintiff also urges that the possession of the land included in the lane was permissive and not adverse. The finding of the court to the contrary is amply sustained by the evidence.

Plaintiff insists that the description of the boundary lines as given in the findings of the court is so indefinite that they cannot be located therefrom. The court found that the boundary line between the east half and the west half of the northeast quarter of the section

"is located on a direct line north and south between a post situated

twelve (12) inches east of an iron stake placed by the surveyor, F. J. Armstrong, on the north line of the *southeast quarter* (S.E.¼) of said section seventeen (17) which iron post according to said Armstrong's survey is 1326.21 feet west of the northeast (N.E.) corner of *said northeast* quarter (N. E.¼), and a point in the south line of *said northeast* quarter (N.E.¼) of said section formerly shown by a stone monument but which monument was shifted by said Armstrong, when he surveyed the line, to a point indicating his location of the south boundary between the lands of said William Fritche and the plaintiff, said point being two and one-half to three feet west of the original location of said stone monument."

It is urged that the statement that Armstrong placed the iron stake on the north line of the southeast quarter, and the statement that he moved the stone monument "two and one-half to three feet" west of its original location, render the location of the line uncertain. The recital that the iron stake was placed on the north line of the southeast quarter is so obviously a clerical error that it could mislead no one. The line which was being located was the line between the east half and the west half of the northeast quarter of the section, and the remainder of the description shows clearly that the court was giving the location of the point which marked the north end of that line, and which could be nowhere except on the north line of that quarter section. He fixed this point as 12 inches east of the iron stake and the iron stake as 1326.21 feet west of the northeast corner of said northeast quarter. If we reject the call in question as impossible, which it obviously is, the other calls locate the north end of the line exactly. The court fixed the south end of the line at a point on the south line of said northeast quarter formerly marked by a stone monument, but which monument had been moved "two and one-half to three feet" west of its former location. Plaintiff insists that the location of the south end of the line is indefinite because the court failed to state the exact distance the monument had been moved. But the court fixed the location of this end of the line at the point formerly marked by the monument, not at a point "two and one-half to three feet" east of the present location of the monument. The testimony shows that this monument had remained at its former

location for more than 20 years and that the line running north from such former location toward the former location of the iron stake on the north line of the quarter section is still marked on the ground by fence posts set more than 20 years ago, and we must assume, in support of the finding, that the point designated as the south end of the line is a known point which can be located on the ground.

It appears from the evidence that a public highway runs east and west through the center of the section. The court fixed the north end of the second line at the center of the bridge on this highway, and the south end of that line at the point marked as the northwest corner of the triangular tract previously mentioned by the fence now existing along the northeasterly boundary of that tract. We find nothing indefinite in this location. Plaintiff urges that the finding does not designate the particular bridge taken as a starting point. Only one bridge is mentioned in the record. If, as plaintiff now asserts, there are several bridges on this highway it ought not to be difficult to locate the one at the center of the section. The statute, section 8097, G. S. 1913, provides that after the entry of judgment the court may direct a competent surveyor to establish permanent iron or stone landmarks to mark the location of the boundary lines as established by the judgment, and the court, in its order, provided that either party might apply for a further survey and the placing of such landmarks if he so desired. If either party wishes to have the lines marked on the ground in a more substantial manner the way is open for him to have it done.

We find nothing in the record which would justify a reversal and the order appealed from is affirmed.