ELDEN O. BORNEMAN ET ALS. *vs.* H. A. G. MILLIKEN ET ALS.

Lincoln.    Opinion April 11, 1924.

*When it appears from all the evidence that a doubt exists as to the location on the face*
*of the earth of the starting-point of a line described in a deed, the contempora-*
*neous and subsequent acts of the parties in establishing or recogniz-*
*ing a certain line as the line intended by the deed are*
*admissible.*

In this case the facts when produced revealed an uncertainty as to which of two
claimed town lines was the actual starting-point in the contemplation of the
parties and as bearing on that question the acts of the parties are of compelling
force in determining the true construction.

Testimony as to the declarations of a former owner made while in ownership and
possession of the land, pointing out the boundaries of the land itself, said owner
having deceased prior to this trial, are admissible although said owner had
himself testified at a former trial of the case and his evidence at that trial was
admitted in evidence at this trial.

Evidence as to occupation by the parties and their predecessors in accordance
with a recognized and acquiesced-in boundary was admissible as bearing upon
the true construction of the deed.

Record of a suit between one Simmons and one Betsey Studley was admissible
as one of the circumstances tending to throw some light upon the situation.

From the charge taken as a whole it is clear that the quotations from an opinion
in a Maine case as to the force and effect of a conventional line were employed
by way of illustration and were not misleading.

On exceptions and motion.    An action of trespass quare clausum
in which plaintiffs charge the defendants with breaking and entering
their close, described in the declaration, and cutting  timber and
wood growing thereon.    The general issue was pleaded.    The case
was tried to a jury and a verdict of $1,295.03 was rendered for the
plaintiffs.    The case has been tried twice before, the first time at the
April Term, 1915, when a verdict was rendered in favor of Scott, one

of the defendants, by order of court, and a verdict for plaintiff against the other defendants was rendered by the jury, which verdict was set aside by the Law Court. At the October Term, 1917, it was tried again and a verdict for defendants was ordered by the court and the plaintiffs excepted, which exceptions were sustained by the Law Court and a new trial granted. In this, the third trial, exceptions were taken to the introduction of certain evidence, and a general motion for a new trial filed. Exceptions overruled. Motion overruled if plaintiffs within thirty days from filing of the mandate remit all of the verdict in excess of $600; otherwise, motion sustained and a new trial granted.

The case is fully stated in the opinion.

*M. A. Johnson*, for plaintiff.

*A. S. Littlefield*, for defendants.

SITTING: CORNISH, C. J., PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J. This is a question of disputed boundary, that is, of the dividing line marking the westerly boundary of the plaintiffs' land, and the coincident eastern boundary of the land of Scott, one of the defendants. The other defendants purchased from Scott the timber and wood standing on the disputed tract and cut and removed the same. For the sake of convenience the Scott land will be spoken of as the land of the defendants. The action is trespass quare clausum and is before the Law Court for the third time. At the first trial a verdict was ordered by the court in favor of defendant Scott and a verdict was rendered by the jury in favor of the plaintiffs against the other defendants in the sum of $553.25. This verdict was set aside by the Law Court as being clearly wrong under the evidence then presented. 116 Maine, 76.

At the second trial the presiding Justice directed a verdict for the defendants and on exception this ruling was reversed, on the ground that much new and important evidence had been introduced by the plaintiffs and the case should therefore have been submitted to the jury. 118 Maine, 168.

At the third trial the jury again found for the plaintiffs, assessing damages in the sum of $1,295.03, and again the case is brought to this court on defendants' motion and on exceptions.

## 1. Motion.

The deed which is the foundation of the plaintiffs' title was given by Waterman Thomas to Godfrey Hoffses on December 30, 1779, and conveyed: "All that certain tract or parcel of land lying in Waldoborough bounded as followeth: beginning at a stake and stones in Waldoborough town line at the southeast corner of Vollentine Mink's land one mile to a birch tree marked on four sides, from thence south fifteen degrees east to a stake and stones in John Labe's line, from thence east by land of John Labe one mile to a stake and stones at the town line, from thence north fifteen degrees west as the town of Waldoborough line runs, to the bounds first mentioned, containing one hundred acres."

Through various mesne conveyances the plaintiffs have succeeded to the ownership of a portion of the property covered by this deed, their immediate predecessor in title being George W. Studley who owned the premises from 1868 to 1913, when he conveyed to them.

At the first trial the battleground was the original and true line between the towns of Waldoborough and Warren, Waldoborough having been incorporated as a town by the Commonwealth of Massachusetts on June 29, 1773. The description in the Waterman Thomas deed of 1779 starts in the Waldoborough town line and runs westerly one mile to a birch tree marked on four sides. That birch tree marked the western boundary of the plaintiffs' and the eastern boundary of the defendants' land, but it long since disappeared. Therefore, the parties at the first trial sought to establish the location on the face of the earth of the original town line, to measure westerly one mile therefrom and fix that point as the plaintiffs' westerly bound. The town line as claimed by them was commonly known as the "old town line" and also as the line of 1812. The defendants sought to establish a line farther east, run by Commissioners appointed by the Supreme Judicial Court in 1836, and spoken of in the case as the "Court line" or line of 1836, as the true town line.

If the town line was located as claimed by the plaintiffs, the disputed tract belonged to them and they were entitled to recover in this action. If, however, the town line was as claimed by the defendants the disputed land belonged to Scott, and this action could not be maintained.

At the second trial the issue was somewhat broadened, as is well stated in the opinion, 118 Maine, 170, viz.: "Considerable new evidence at the second trial was introduced by the plaintiffs and the contention of the plaintiffs now is in effect, not that the so called 'old town line' between Waldoboro and Warren is the true town line, but that it was the point of starting when the deed was given by Waterman Thomas to Godfrey Hoffses in 1779, and that by long acquiescence at least of the abutting owners the so called 'old town line' has ever since been regarded and is the easterly boundary of this property; that the westerly line of this property, which is the real issue in this case, was originally fixed by a birch tree and though said birch tree has disappeared through the ravages of time, the western boundary has continued certain and fixed by long occupation and acquiescence of the owners on each side."

The jury were not permitted to pass upon this issue at the second trial as a verdict for the defendants was ordered by the presiding Justice, but the same issue was before the jury at the third trial and a verdict was rendered for the plaintiffs. At this third or last trial the fact that the "old town line" so called was regarded as the easterly boundary of this property and was the starting-point from which the westerly measurement was taken, together with the consequent recognition of and acquiescence in the westerly boundary thereby fixed and the occupation by the contiguous owners up to that time on either side for a very long period of years, was emphasized even more strongly than at the second trial. The court brought this sharply to the attention of the jury in his charge as follows: "Now the real issue in this case, as I am going to put it to you, is whether the east line of the plaintiffs' land began upon what on this plan is denominated the 'old town line' which is admitted to have been located as early as 1812, or whether it is on the court line which was surveyed and located in 1836. Now the rule of law is, with reference to the construction of deeds, that you shall find out what the parties intended to do,—not what they intend to do now, what they have intended to do in the last fifty years,—but what did these parties intend when these early deeds were made. Where did that 1779 deed start from, actually on the face of the earth? What line did they have in mind? What place did they have in mind? . . . . What line, away back there, when they were

deeding these properties, did they intend to deed them from? Because that is the rule that will control in this case. The true town line, actual town line, is not controlling nor binding. Nor is the 1812 line controlling or binding. It is only evidence for you to consider in connection with the other evidence in the case, to determine whether the 1836 line, the Court line is meant or the 1812 line."

The court then went on to say that when it appears from all the evidence that a doubt exists as to the starting-point, the contemporaneous and subsequent acts of the parties in establishing or recognizing a line as the line intended by the deed, are admissible and of probative force. This is sound law. This is not the case of a clear and unambiguous deed as in *Ames* v. *Hilton,* 70 Maine, 36, and *May* v. *Labbe,* 114 Maine, 374, but even under those circumstances a conventional line is held in this State to be the fixed boundary line although it varies from the course given in the deed, *Knowles* v. *Toothaker,* 58 Maine, 172, cited with approval in *May* v. *Labbe,* supra. Here the facts when produced reveal a latent ambiguity, an uncertainty as to which of two claimed town lines was the actual starting-point in the contemplation of the parties, and as bearing on that question the acts of the parties are of compelling force in determining the true construction. *Gove* v. *Richardson,* 4 Maine, 327; *Whitcomb* v. *Dutton,* 89 Maine, 212; *Haring* v. *Van Houten,* 22 N. J., Law 61.

A large volume of evidence was directed by the plaintiffs both toward the old town line as being the true town line, and also toward the fact of the recognition of and acquiescence by all parties in the western boundary as measured therefrom and as now claimed by the plaintiffs as the actual boundary between land of the plaintiffs and land of the defendants. It would be futile to enter upon a detailed analysis and discussion of the evidence bearing on these points. The record contains five hundred printed pages, embracing a vast amount of oral testimony, in addition to seventy-two deeds and other exhibits introduced by the plaintiffs, and twenty-two deeds and other exhibits introduced by the defendants. Commendable diligence on the part of counsel on both sides has brought to light many old plans and a vast amount of well-nigh hidden evidence. Of all this the jury had full benefit. It is sufficient to state that

after careful study it is the opinion of the court that a verdict for the plaintiffs on the question of trespass was amply warranted and should not be disturbed.

EXCEPTIONS.

Countless exceptions were reserved by the defendants during the progress of the trial, but only five are pressed before this court.

1. Exception to the admission of testimony as to declarations of George W. Studley made while in ownership and possession of this land, pointing out the boundaries on the land itself, said Studley having deceased prior to this trial. This evidence was admitted under the authority of *Royal* v. *Chandler*, 83 Maine, 150; *Wilson* v. *Rowe*, 93 Maine, 205; *Emmett* v. *Perry*, 100 Maine, 139.

The defendant would distinguish these cases because Studley was alive and testified at the first trial of this case and a copy of his testimony was introduced in evidence in this third trial without objection. This fact however, does not render declarations under the rule in *Royal* v. *Chandler*, inadmissible. They are not thereby converted into hearsay evidence. They were properly admitted, their weight being for the jury.

2. Exception to evidence tending to prove the boundary of other people's land claimed to be bounded upon the town line, and also as to the fact that the town line as claimed by the plaintiff was commonly known as the "old town line."

In a case of this nature the evidence necessarily takes a somewhat wide range, guided by the wise discretion of the presiding Justice as to what is pertinent. We can see where the bounds of adjoining and nearby owners might throw some light upon the issue in this case and be of some aid to the jury. If not it would be entirely harmless.

3. Exception to the testimony of the plaintiffs that the land in dispute had been continuously occupied by them and their predecessors in title, and never by the defendants or their predecessors in title. This was not introduced to prove adverse possession, but occupation in accordance with a recognized and acquiesced-in boundary, and was clearly admissible.

4. Record of a suit between Simmons, a predecessor in title of the defendants, and Betsey Studley, widow of Jacob Studley, a

predecessor in title of the plaintiffs. The plaintiffs claimed that this record showed that an agreement was made in court that the referee therein should establish the line between them and that they afterwards abided by it and lived up to it. This was but another circumstance touching the situation, the force and effect of which was properly for the jury. Its admission was not prejudicial to the defendant.

5. Exception to instructions by the court with reference to a line agreed upon by the parties and lived up to thereafter.

This refers to the quotations by the court from *Knowles* v. *Toothaker*, 58 Maine, 172. That case involved a conventional line established and agreed upon by the parties, and the soundness of its doctrine is not attacked by the defendants. Their claim is that it did not apply to the pending case where there was no evidence as they say of laying out or establishing a boundary, but at most only of recognizing and acquiescing in a certain boundary. The distinction is well taken, unless it is true as some courts hold, that long continued recognition, acquiescence and occupation imply a tacit agreement, as binding as an express one, as in *Davis* v. *Angerman*, 195 Iowa, 180, 192 N. W., 129; *Bahneman* v. *Fritchie*, 147 Minn., 329, 180 N. W., 215. Some authorities hold such practical location binding as a matter of public policy to prevent the unsettling of old established lines. But even conceding the distinction as taken by the defendants, it is clear from the charge, taken as a whole, that the court used some parts of *Knowles* v. *Toothaker* merely by way of illustration and made it plain to the jury that they were to consider the question of recognition and acquiescence only as bearing on the intent of the parties, as already stated. They could not have been misled.

The defendants take nothing by their exceptions. Even if a technical and academic error crept in, during a long and somewhat complicated trial, it was of such slight importance as to have no reversing effect in view of the convincing evidence in support of the plaintiffs. A just result has been reached and should stand, except so far as the amount.

DAMAGES.

The damages, $1,295.03, are manifestly excessive. Testimony was introduced tending to show the amount of wood and timber cut

from the disputed tract and its value. This might not be the full measure of damage, however. The true rule was, as given to the jury, the difference in value on the plaintiffs' premises before and after the trespass. Two of the plaintiffs testified that that difference was six hundred dollars. They cannot complain if they are awarded the full amount to which they said they were entitled.

The entry will therefore be,

> *Exceptions overruled.*
> *Motion overruled if plaintiffs within thirty days from filing of this mandate remit all of the verdict in excess of $600; otherwise, motion sustained and new trial granted.*