## BERT W. BEMIS *vs.* DAVID BRADLEY.

### Oxford.　Oponion December 17, 1927.

*A boundary line may, under certain circumstances, be permanently and irrevocably established by parol agreement of adjoining owners, and a line so agreed upon by the parties in interest and occupied to for more than twenty years is conclusive.*

*When the principle of estoppel applies a shorter period may be sufficient.*

*A line established by agreement of parties, at or near the time of making the conveyance, may be conclusive, although the occupation be for less than twenty years, as proving the intent of the parties to the conveyance.*

*An agreement fixing a boundary line under the belief that it is the true line, when in fact it is not, is not binding and may be set aside by either party when the mistake is discovered unless some principle of estoppel prevents.*

In the instant case, defendant having failed to establish a line by agreement within the required limitations and plaintiff having sustained the burden of establishing the true line, the plaintiff prevails.

Rents and profits not being specifically claimed in the declaration are not considered in this decision.

On report. A real action to determine the dividing line between adjoining lots, one being owned by plaintiff and the other by defendant who claimed his line to have been established by agreement. At the conclusion of the evidence by agreement the cause was reported to the Law Court. Judgment for the plaintiff.

The case appears fully in the opinion.

*Albert J. Stearns and Elias Smith,* for plaintiff.

*Hastings and Son,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PATTANGALL, JJ.

PATTANGALL, J. Real action. On report. Plaintiff is the owner of the western portion of Lot No. 5 in the Town of Stowe. Defend-

ant is the owner of the eastern portion of the same lot. The dispute is as to the dividing line between them, the disputed territory including an area of between four and five acres.

Plaintiff claims the division line as one beginning at a point on the southerly side line of Lot No. 5, one hundred fifty-four (154) rods westerly of the town line dividing Stowe from Lovell, which is also the east line of No. 5, and running northerly fifty-four and two-tenths (54.2) rods to the north line of the lot. All of the land east of the line and embraced in the area of Lot No. 5 is conceded to belong to the defendant.

Defendant claims that the division line begins at a point on the south line of Lot No. 5, fourteen and four-tenths (14.4) rods westerly of the point of beginning claimed by the plaintiff, then running northearly fifty-four and two-tenths (54.2) rods to the north line of the lot, terminating at a point fifteen and six-tenths (15.6) rods west of the line claimed by the plaintiff.

The title of both parties comes from a common source. Lot No. 5 was originally owned by Ann A. Barrows. In 1843, she conveyed to Eli Whitney "fifty acres off the east end of Lot No. 5." The land thus acquired by Whitney was conveyed through a series of owners, by the same description, until the title finally came to this defendant, in 1902. In 1854, Ann A. Barrows conveyed to Ithiel E. Clay the portion of Lot No. 5 not already sold to Whitney, and through a series of conveyance title to this property was finally acquired by the plaintiff, in 1920.

Plaintiff bases his claim to the division line above referred to on an actual survey made recently, the line thus marked inclosing an area of slightly more than fifty acres. There is evidence of spotted trees which indicates that, at some former time, a division line was run on this location. This evidence consists of a spotted post or stump on the south line of Lot No. 5, the spots being described by the surveyor as very old; an old spotted beech stump about twelve rods northerly therefrom; another spotted beech stump about ten feet farther north; a spotted beech about thirty rods still farther north, located four feet east of the line; and a spotted hemlock tree at the northerly terminus of the line. The surveyor testified that if this line was accepted as the east line of the defendant's lot, it would inclose an area of between fifty and fifty-one acres. A computation

of the inclosed area, however, using the measurements given, appears to indicate a fraction over fifty-two acres.

Defendant claims a line based on the proposition that in April, 1906, the then owner of the plaintiff's land and this defendant located a line by agreement, nearly parallel with the line claimed by the plaintiff and westerly therefrom a sufficient distance to include between four and five acres in addition to the land conceded him by plaintiff.

It is a familiar and well settled principle of law that a boundary line may, under certain circumstances, be permanently and irrevocably established by parol agreement of adjoining owners.

In *Ames* v. *Hilton,* 70 Me. 36, our court defined certain limitations within which a line may be so established: "It is only where there are two or more monuments upon the face of the earth, each of which answers to the call of the deed, that proof of the one erected by the parties will govern; or where the parties running a line as of a certain course or distance and then making a deed calling for a line of the same course or distance, intending it as the line run; or where the deed conveys a part of a lot by a line which shall embrace a certain quantity and the parties have run and marked the line as embracing the quantity called for; and in cases similar in principle."

It is also well settled that a line agreed upon by the parties in interest and occupied to for more than twenty years is conclusive. *May* v. *Labbe,* 114 Me. 379. The early case of *Moody* v. *Nichols,* 16 Me. 23, states the rule to be "that the parties may agree upon a line of boundary and when they have so agreed and the possession is in accordance with it, such boundary, after an acquiescence for so long a time as to give title by disseizin, will not be disturbed."

*Emery* v. *Fowler,* 38 Me. 102, is authority for the further proposition that "Whether monuments are erected upon the face of the earth by the mutual agreement of parties, and a deed is given intended to conform thereto, or whether they are subsequently erected by them with intent to conform to a deed already given, those monuments must control, notwithstanding they may embrace more or less land than is mentioned in the deed." This case is quoted in *Knowles* v. *Toothaker,* 58 Me. 174, as extending the doctrine of *Moody* v. *Nichols* to cases where possession had not been long enough to give title by disseizin, and the opinion further states that "When a line described

in a deed as running from a given point, is soon afterwards located and marked upon the face of the earth by the parties, and thereafterwards the line thus established is recognized and treated by them as the true line, it is conclusive upon the parties and their assigns, although it be subsequently ascertained that it varies from the one given in the deed."

*Moody* v. *Nichols* and *Knowles* v. *Toothaker*, supra, rest, however, upon the theory that the acts of the parties evidence the intent of the conveyance. When doubt exists as to a dividing line between adjacent owners, the contemporaneous and subsequent acts of the parties, in establishing or recognizing a line as the line intended by the deed, are admissible and of probative force. *Borneman* v. *Milliken*, 123 Me. 488. But, this situation is not before us. The line claimed by defendant was first surveyed in 1906. The conveyance from Barrows to Whitney, the original setting off of defendant's land from the remainder of Lot No. 5, was in 1843. The intention of the parties to this early deed cannot be interpreted by the acts of their respective successors in title sixty-three years afterwards.

Plaintiff argues that the line claimed by defendant, even if established by agreement in August 1906, would not be binding upon the then owners or their grantees until twenty years had passed, and that his action having been brought in April, 1926, the necessary time had not elapsed to cause the agreeement as to the line to become conclusive.

Authorities are at odds as to whether or not occupation up to an agreed line must be for the period required in cases of adverse possession in order that the line so agreed upon may be conclusive.

It has been stated as a general rule that acquiescence in a boundary line between contiguous owners, fixed by agreement, need not be for the full statutory period required to establish disseizin, but that such acquiescence for a reasonable period short of that time may be decisive as to the rights of the parties or their successors. 4 R. C. L. 129; 8 Ann. Cas. 85, note; *Riley* v. *Griffin* (G.A.) 60 Am. Dec. 726, and note; 110 Am. St. Rep. 686, note; 22 Am. St. Rep. 35, note; 83 Am. St. Rep, 793, note; 16 Ann. Cas. 150, note. But this view of the law is not universally accepted, and we do not find any case in which

our court has concurred in it. The precise question has apparently not been definitely decided here. In *Abbott* v. *Abbott*, 51 Me. 584, our court, noticing a division of authorities on the point, said, "In some of the states, such an agreement is held to be binding and conclusive at once on the ground of estoppel. This doctrine is questioned in other states, but it seems to be everywhere conceded that exclusive possession under such an agreement for twenty years or long enough to bar an entry will establish a title in the possessor, by disseizin, if not by estoppel."

In *Proctor* v. *Libby*, 110 Me. 39, the court held that when a line is located and marked upon the face of the earth by the parties, and thereafterwards the line thus established is recognized and treated by them as the true line, it is conclusive upon the parties or their assigns. And again, in *Ilsley* v. *Kelley*, 113 Me. 503, "The owners of adjoining land may agree to a division line and that agreement be binding upon them and those claiming under them." It will be noticed that in neither of these cases was there any discussion as to the length of time of occupation necessary to make such an agreement effective.

In *May* v. *Labbe*, 114 Me. 379, a position not in accord with the majority rule is indicated. In this case, the court said, "The title does not pass to the occupier on either side by agreement, for that would controvert the Statute of Conveyances. It passes by disseizin. Each party claims and possesses to the agreed line adversely to the other, because of the agreement." But the case was decided on other grounds.

The majority rule is based on the theory of estoppel, not on adverse possession, and our court has not, as yet, authoritatively discussed the distinction or decided the question.

We are not called upon to decide it here. The line claimed by the defendant cannot in any event be regarded as a conventional or agreed boundary because, measured by another standard altogether, it fails to fill the requirements necessary to such a line.

An agreement fixing a boundary line under the belief that it is the true line, when in fact it is not, is not binding and may be set aside by either party when the mistake is discovered, unless some principle of estoppel prevents it, as where the rights of innocent third parties have intervened. 4 R. C. L. 131.

The mere making of declarations and admissions as to position of boundary lines, when made in good faith and by mistake and in ignorance of the true location of the line, does not work an estoppel. *Brewer* v. *Railroad Corporation*, 5 Metc. 478.

The weight of authority is that where the intention was to establish the line according to the true boundary, and by mistake the parties agreed upon a line which does not conform to such a boundary, the line so agreed on is not conclusive, and the agreement may be set aside by either party.    9 C. J. 238.

If a dividing line is settled by parol agreement and actual location between the owners of adjoining tracts of land, such location will be received as strong evidence of the line thus established, though it is not conclusive to prevent either party from showing that it was settled erroneously.    *Gove* v. *Richardson*, 4 Me. 327.    Many authorities can be quoted in support of this rule.

A careful analysis of the evidence relating to the marking of the line claimed by the defendant, leads to the conclusion that Mrs. Kneeland, the predecessor in title to the plaintiff, and this defendant, were not at that time endeavoring to establish a line by agreement, but were endeavoring to ascertain and mark their division line as they then understood it to be.    They had both assumed, from information which they had received, that a pine stump marked the northeast corner of Mrs. Kneeland's lot;   and assuming that fact, they ran a line from this stump to the south line of Lot No. 5 on a course which was inteded to parallel the eastern and western  lines of the original lot.    Having done this, they set up a corner on the south line of the lot and marked a division line connecting the termini thus established.    They apparently agreed, not that this line *should be* the dividing line between their properties, but that it *had been* such dividing line.    In other words, they were not attempting to establish a line by agreement, but to reproduce an original line.

The dispute between the parties, therefore, narrows down to the question of whether the line claimed by the plaintiff, or the line claimed by the defendant is the true division line between them. There is no evidence supporting the defendant's line as the true line, excepting the testimony that Mrs. Kneeland, during her ownership, of the land now owned by the plaintiff, and this defendant had both been told that the pine stump, which is the northerly terminus of the

defendant's line, marked their corner.　The source of this information is not given, nor were there any marks on the pine stump to assist in identifying it as a corner, nor was there anything on the face of the earth to indicate that there ever had been a division line between the two lots, running south from the pine stump; and the line so run would inclose an area of approximately fifty-seven acres, rather than the fifty acres set off in the original deed from Barrows to Whitney.

On the other hand, the line contended for by the plaintiff gives to the defendant a somewhat larger acreage than that demanded in his deed, and is substantiated by markings on the face of the earth, consistent with an old line, and as distinct and connected as one would expect to find in cut-over land.　It may fairly be said that on the question of which of the two lines is the true division line between the lots, the preponderance of the evidence lies with the plaintiff, and the burden of proof is sustained.　The only alternative to accepting plaintiff's line as the correct line would be to disregard entirely the evidence relating to both lines, and set off exactly fifty acres to the defendant in accordance with the original grant; in which event, he would receive somewhat less land than that which the plaintiff concedes to him.

Rents and profits are not considered in this decision.　They were not claimed in the writ.　*Pierce* v. *Strickland,* 25 Me. 440; *Larrabee* v. *Lambert,* 36 Me. 440; *Rollins* v. *Blackden,* 112 Me. 464; *Lowe v. Brown,* 123 Me. 398.

*Judgment for plaintiff.*