**Elden C. BARTLETT**

v.

**Kenneth L. PULLEN et al.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1991.
Decided Feb. 28, 1991.

Robert Cumler (orally), Davidson & Cumler, Waldoboro, for plaintiff.

James E. Mitchell (orally), Augusta, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and BRODY, JJ.

McKUSICK, Chief Justice.

Both plaintiff Elden Bartlett and defendants Kenneth and Elsie Pullen claim title to a 40–acre parcel of land in Somerville. After a jury trial, the Superior Court (Lincoln County, *McKinley, J.*) entered judg- ment declaring Bartlett to hold title to the disputed parcel and awarding him damages for defendants' trespass. On the Pullens' appeal, we affirm.

Bartlett and the Pullens trace their respective claims of title to the 40–acre parcel to two separate deeds executed by one James Bailey in 1838 and 1842, dividing a 178–acre parcel known as Lot 19 on the Norris Plan. In 1838 Bailey conveyed to Bartlett's predecessor in interest 100 acres in the Town of Washington comprising that part of Lot 19 lying east of the town line between Washington and Somerville.[1] In 1842 Bailey conveyed to the Pullens' predecessor in interest the remaining 78 acres of Lot 19, all of which lay in Somerville. Resolution of the present dispute depends on the location on the face of the earth of the Washington–Somerville town line as intended by the parties to the 1838 deed.

The jury heard evidence that in the late 1850s, litigation in the Supreme Judicial Court involved a dispute over the location of the Washington–Somerville line under the 1811 Massachusetts Act incorporating the Town of Washington.[2] In 1856 commissioners appointed by the Court recommended that the town line should be laid out according to the monuments described in the 1811 Act (the 1856 Commissioners' line), but in 1860 the Court held that the town line ran according to the courses and distances set forth in the Act, and the Court thus established the present line between the two towns.

In the case at bar the Superior Court ruled as a matter of law that the boundary between the lots of Bartlett and the Pullens is the Washington–Somerville town line as contemplated by the 1838 deed. The court submitted to the jury the factual issue whether the parties to the 1838 deed intended the critical boundary to be the 1856 Commissioners' line, in which event title to the disputed parcel would be in Bartlett, or the present town line, in which event the Pullens would hold title. The

1. In 1838 and 1842, the Town of Somerville was known as Patricktown Plantation. *See* P. & S.L. 1858, ch. 235 (Town of Somerville incorporated).

2. The Town of Washington prior to 1823 bore the name of Putnam. *See* P. & S.L. 1823, ch. 183 (Putnam renamed Washington).

jury found that the parties to the 1838 deed intended the boundary to be the 1856 Commissioners' line and that Bartlett holds title to the 40–acre parcel.

## I.

### Record Title

The Pullens first contend that the trial court erred in excluding evidence on the issue of which of the parties had superior record title under the recording statute, and in refusing to instruct the jury on the issue of record title. Maine's recording statute, which provides that unrecorded conveyances are ineffectual against anyone other than the grantor and persons having actual notice, 33 M.R.S.A. § 201 (1988), is applicable only to competing conveyances of the same property. *See McCausland v. York*, 133 Me. 115, 120, 174 A. 383, 385 (1934) (defendant obtains no priority merely because plaintiff's deed was not recorded unless the parties claim title under deeds purporting to convey the same property). There is no evidence in the record that the parties to this appeal or their predecessors in title received deeds purporting to convey the same property. On the contrary, the parties trace their claims to the disputed parcel back to separate deeds by which James Bailey divided a larger parcel of land into two separate and mutually exclusive parcels. Record title is irrelevant to this case. The only issue is where on the face of the earth is located the dividing line between the parcel Bailey conveyed to Bartlett's predecessor in 1838 and the other parcel Bailey conveyed to the Pullens' predecessor in 1842.

## II.

### Affirmative Defenses

At the close of the evidence, the Pullens made a motion for judgment on the ground that Bartlett was precluded from claiming the disputed parcel because in a previous case between the parties he had failed to comply with M.R.Civ.P. 13(a) by setting up his claim as a compulsory counterclaim. The prior action, brought by the Pullens, established that the Pullens hold title to a 19–acre parcel of land in Somerville immediately north of the 40–acre parcel now in dispute. *See Pullen v. Bartlett*, 507 A.2d 1070 (Me.1986). The Superior Court held that in the prior action Bartlett should have filed his claim to the 40–acre parcel as a compulsory counterclaim. Because Bartlett has not cross-appealed or otherwise challenged that holding, we have no occasion to address the court's conclusion. The Pullens' appeal, however, challenges the court's further holding that the Pullens in the present case had waived their affirmative defense by failing to raise it in their pleadings as they were required to do by M.R.Civ.P. 8(c).

Under principles usually analogized to *res judicata*, a defendant who fails to interpose a compulsory counterclaim as required by Rule 13(a) is precluded from later maintaining another action on the claim after rendition of judgment. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 13.1, at 267 (2d ed. 1970). *See also Restatement (Second) of Judgments* § 22(2)(a) (1982); 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1417, at 131–34 (1990) (theories of "waiver" and "estoppel" alternatively used as basis for preclusion of subsequent suit or defense on compulsory counterclaim). Thus, if Bartlett's claim to the 40–acre parcel did arise out of the transaction or occurrence that was the subject matter of the Pullens' earlier suit against him, the Pullens had available an affirmative defense in the instant case. The Pullens, however, waived that compulsory counterclaim defense by failing to plead it here as required by M.R.Civ.P. 8(c). *See Reed v. Tracy*, 435 A.2d 745, 746 (Me.1981). That is true even though an appeal was pending in the prior action at the time they filed their answer in this case. The general rule is that a judgment is final for purposes of *res judicata* despite the pendency of an appeal. *See Restatement (Second) of Judgments* § 13 comment f (1982). The Pullens' obligation to plead the affirmative defense had become fixed by the time they filed their answer. Finally, contrary to the Pullens' final contention, we have no basis

for concluding on appeal that in the case at bar the parties tried the compulsory counterclaim defense by consent pursuant to M.R.Civ.P. 15(b). Nothing in the record confutes the trial court's finding that Bartlett had not consented to the trial of that unpleaded affirmative defense. *See Steinberg v. Elbthal,* 463 A.2d 731, 734 (Me. 1983).

■ After return of the jury verdict in Bartlett's favor, the Pullens renewed their motion for judgment, this time on the alternative ground of laches. The court again denied the motion, finding that although the Pullens originally had pleaded laches as an affirmative defense, they had failed to press the issue until long after the verdict when it was too late to inject new issues into the case. The Pullens had more than four years to bring the alleged laches to the court's attention between the time they filed their answer and the time the court entered judgment. For that reason there was no clear error in the court's ruling that the Pullens had failed to preserve that issue. *See Hewitt v. Bahmueller,* 584 A.2d 664, 668 & n. 8 (Me.1991).

### III.

#### *Jury Instructions*

■ The Pullens assert that the court erred in submitting to the jury, rather than deciding itself, the issue of where the parties to the 1838 deed intended the boundary to be located. Construction of a deed to determine what are the boundaries is a ruling on a question of law to be made by the court, while the determination of where the boundaries are on the face of the earth is a finding of fact to be made by the factfinder, here the jury. *See Conary v. Perkins,* 464 A.2d 972, 975 (Me.1983). The court properly ruled as a matter of law that the boundary between the parties' properties is the town line as contemplated by the parties to the 1838 deed. The court then properly submitted to the jury the fact issue of where the town line contemplated by the 1838 deed lies on the face of the earth. *See Borneman v. Milliken,* 123 Me. 488, 491–92, 124 A. 200, 202 (1924) (after evidence of two possible town lines introduced, jury instructed to determine whether parties to original deed intended boundary to be the "old town line" or the "true town line").

■ Alternatively, the Pullens contend that in addition to instructing the jury that the parties to the 1838 deed might have intended the boundary to be either the 1856 Commissioner's line or the present town line, the court's instruction should have given the jury the opportunity to choose a third possibility—that the parties to the 1838 deed intended the boundary between the parcels to be the official town line wherever it lay when the dispute over its location was finally resolved. An instruction on that third theoretical possibility was not generated by the record. The only evidence that the parties to the 1838 deed did not intend the boundary to be a specific line on the ground, identifiable at that time, was speculation engaged in by the Pullens' surveyor on the witness stand. Contradicting his testimony is the fact that the 1838 and 1842 deeds divided a 178–acre tract into one parcel of 100 acres and another of 78 acres, a fact that suggests a specific, then-identified boundary line.

■ Finally, the Pullens argue that the court should have instructed the jury to consider whether, even if the parties to the 1838 deed intended the boundary to be the 1856 Commissioner's line, subsequent owners in their or Bartlett's chain of title had changed the boundary to the present town line. While a boundary line may in certain circumstances be established by parol agreement of adjoining owners, *see Bemis v. Bradley,* 126 Me. 462, 464, 139 A. 593, 594 (1927), the Pullens presented no evidence of an agreement to establish the present town line as the boundary between the parcels.

The entry is:

Judgment affirmed.

All concurring.