## NANCY C. AMES *vs.* BENJAMIN F. HILTON.

### Lincoln.   Opinion June 5, 1879.

*Deed,—construction of. Description. Trespass. Punitive damages.*
*Estoppel.   Agency.*

Where the description of the premises in a deed is as follows: "To Great Spring bridge at the middle of the highway; then as the highway runs, north thirty-seven degrees east, twenty-eight poles, and north twenty-seven degrees east, fourteen poles, to the road leading from the highway to said Andrew's house; then in said road northwest, twenty and a half poles, to the fence near said Andrew's shed; then north three degrees west, seven and a half poles, to a white oak tree in old fence;" and the said "road" from the highway to said Andrew's house being a lane or leading way over the land of the grantor and in which no other person had any rights: *Held,* that in such case the first call, in the deed, to said road stopped at the side line of the lane; but that as the next call commenced "in" said way, an ambiguity arises as to the precise point in the way where the first call terminates, and that it becomes a question for the jury to determine where it did terminate in the road; and then the distances and courses become material elements for their consideration in determining that fact; when determined, and the point thus established, the line by the second call, runs in the lane, northwest, twenty and one-half rods, to the fence near the shed as located at the time of the conveyance, and by the next call, from that point by the course and distance named to the white oak tree.

The clear and unambiguous calls in a deed cannot be set aside, and different ones substituted in their place by parol proof of the acts of the parties, either before or after the deed was made.

For trespass committed willfully, wantonly or maliciously, the jury have the right, and are entitled, in making up their verdict to add to the actual damages, just such an amount as, in their sound discretion and good judgment, under all the circumstances, the defendant ought to pay (and the plaintiff receive) as punishment for the wrong doing.

In the trial of an action of trespass *quare clausum,* wherein a line was in dispute, the plaintiff contended that the defendant was estopped to deny the location claimed by the former by reason of his acts and silence when the survey was made preparatory to the conveyance. The instruction of the presiding justice in relation to such an estoppel did not require the jury to find that the defendant then knew where the true line was: *Held,* that, in the absence of any specific request upon that point, the defendant has no ground of exception when he did in fact have such knowledge and so testified and that fact was not in contention.

In such case, it appeared that the plaintiff, her husband, and the defendant were present on the premises the day before the conveyance to the plaintiff; that the husband acted for her during the survey. There was conflicting evidence whether the defendant then claimed to the husband that the line

was where he claimed it to be at the trial, and the evidence tended to prove that such fact was not communicated to her and that she was ignorant of it: *Held*, that the instruction that, if the husband was agent of his wife in running and fixing the lines, and claim was made to him, it would be the same as if made to her—unless the defendant knew that the agent was not acting faithfully, was permitting her to pay for land which she was not to take; and if he knew that, and knew that she was personally relying upon it, it would not excuse the defendant for not making known to her his title, affords defendant no grounds for exceptions.

ON EXCEPTIONS, AND MOTION to set aside verdict as against evidence, and on account of excessive damages.

TRESPASS on real estate, and wrongs thereon alleged to have been committed by the defendant " wantonly, willfully and maliciously."

The premises upon which the alleged trespass was committed are described in the deed of Isaac Hilton to Andrew Hilton, and from which the plaintiff derives her title, as follows: " Beginning at a pine stump on Israel Howard's line and standing in his field and running southeast twenty-three poles to a stake and stone, then southwest three poles to a stake by an old fence, then southeast thirty-five poles to a stake and stone about one pole southeast of Daniel Howard's corner; thence northeast thirty six poles to an old fence, then north eighty-seven degrees east twenty-four and a half poles to the Great Spring bridge at the middle of the highway, then as the highway runs north thirty-seven degrees east twenty-eight poles and north twenty-seven degrees east fourteen poles to the road leading from the highway to said Andrew's house, then in said road northwest twenty and a half poles to a fence near said Andrew's shed, then north three degrees west seven and a half poles to a white oak tree in old fence, then north twenty-four degrees east about three hundred and twenty poles to a stake and stones in the northern line near a place called the bluff head, then west-northwest eighty-five poles to a pile of rocks on the west side of a ledge, then south-southwest about four hundred and sixty poles to the first bounds, containing one hundred and fifty acres more or less."

And in the plaintiff's writ said premises are described as follows: " Beginning at Dudley Hayward's Corner, so called; thence

north twenty-seven degrees east, bounded by the Chism lot, so called, and land of Solomon Potter, one hundred and sixteen and half rods to a stake and maple tree spotted for a corner; thence south sixty-three degrees east eighty-two rods to the east line of said tract to land of Benjamin F. Hilton's at the fence; thence south thirty-nine degrees west on said east line as said fence then run and by the same to a white oak tree near the house; thence south two degrees west six rods and ten feet to the place where the northeast corner of a shed stood May 12, 1866; thence south forty-four degrees east twenty rods to the county road; thence southeasterly by said road forty-two rods ten links to the northeast corner of said Benj. F. Hilton's field; thence north eighty-four degrees west by said field twenty-four rods to northwest corner of said field; thence by the west line of said field to the road leading to Israel Hayward's; thence by said road westerly by land of David Ware and land of said Hayward to the first named bound; being the plaintiff's homestead as then inclosed and fenced."

The plea was the general issue, with a brief statement as follows: "And the defendant further says, by way of brief statement under the statute, that, at the time of the supposed trespasses set forth in the plaintiff's writ, he was the owner in fee to the center of the lane leading from the highway to the plaintiff's dwelling house to a point in the center of said lane which a straight line drawn from the oak tree mentioned in the plaintiff's writ to and by the northeast corner of the shed now standing on the northerly side of said lane as it stood May 12, 1866, would intersect, and thence on such straight line to said oak tree, and a right of way in common with the owner of the plaintiff's lot over the whole of the same lane; and that all he did was within and in the exercise of his legal rights."

A statement of the case and the nature of the evidence appear in the opinion.

Before the presiding justice charged the jury the defendant requested that the following instructions be given:

I. That the call in the deed of Isaac Hilton to Andrew Hilton "in the road (or lane) N. W. twenty one-half rods" legally

requires that this line shall run in the center of such lane, even if such center is not exactly in the course named in the call.

II. Where a deed calls for a line in a fenced lane, it is, by legal intendment, to run in the center of such lane.

III. And when in a line running thus in the center of a fenced lane the next call of a deed is " to " a monument, and that monument is found on the side of the lane, the meaning of the call is that the line shall run in the center of the lane to a point opposite the monument.

IV. And thence to the monument.

V. And that the same rule applies to the fenced lane in this case, in the respect named in the third request, as applies to rivers, streams, ditches and highways.

VI. That, if the parties to the old deed of 1822, or the plaintiff's deed of 1866, went on the ground just before making the deed and located and marked on the face of the earth the land intended to be conveyed, and a deed was afterwards made intended to cover the same land, and the locating and marking and the description in the deed do not agree, the location and marking will control the deed, and the land thus located and marked will be the land conveyed.

VII. If the jury find that the parties to the deed of 1822, just before making the deed, went on to the land and run the line from the Great Spring bridge in the highway to the lane and thence in the middle of the lane towards the house to a stake put down by them, and then run a straight line from that stake close by the northeast corner of the old shed to the oak tree, as and for the dividing line of the conveyance, then that was the true line between the lots.

VIII. Especially so, if the parties immediately after built a fence from the oak tree on the line so run to the line close by the corner of the shed, as and for a line fence, and occupied to it on both sides and recognized it as the true line for twenty years or more.

IX. That, if they find that the lane mentioned in the deed from John Trask to the plaintiff was a way in common for the owners of the plaintiff's lot and the defendant's lot; or if they find that

it was a private way, said deed would only convey the land to the center of the lane.

X. That a deed bounding land on a private way, will give a title to the center of that way and no more.

XI. In an action of trespass *quare clausum fregit*, the gist of the action is the breaking and entering, and unless such breaking and entering are proved, the action must fail.

XII. That, if they find that the plaintiff permitted her husband to act for her in running out the land which she was about to purchase, then a notice to him of the lines and boundaries of the land are the same in law as if given to her personally.

XIII. If Isaac Hilton and his grantor and his grantees have occupied up to the certain fences as the division lines for twenty years and more, the statement by Isaac Hilton in the trial of this case that he did not intend to claim more than his deed gave him cannot affect the rights and title of the defendant.

The instructions refused by the judge, and those given, of which the defendant complains, are stated in the opinion.

The verdict was for the plaintiff for the sum of $254.16 damages; and the defendant alleged exceptions, and also moved to set aside the verdict as against evidence and the weight of evidence, and because the damages were unreasonable and excessive.

*A. P. Gould & J. E. Moore*, for the plaintiff.

*J. Baker & B. F. Hilton*, for the defendant, contended, *inter alia :*

I. Error in the presiding justice in not giving requested instructions. *Cottle* v. *Young*, 59 Maine, 110. *Robinson* v. *White*, 42 Maine, 209. *Johnson* v. *Anderson*, 18 Maine, 77. *Luce* v. *Carly*, 24 Wend. 451. *Newton* v. *Eddy*, 23 Vt. 319. *Cold Spring Iron Co.* v. *Tolland*, 9 Cush. 492. *Newhall* v. *Ireson*, 13 Gray, 262. *Com.* v. *Alger*, 7 Cush. 97. *Inhbts. Ipswich*, Pet's, 13 Pick. 431. *Child* v. *Storr*, 4 Hill, 369. *Bradford* v. *Cressey*, 45 Maine, 13. *Knowles* v. *Toothaker*, 58 Maine, 175. *Emery* v. *Fowler*, 38 Maine, 102. *Fisher* v. *Gray*, 9 Gray, 441. *Lowell* v. *Robinson*, 16 Maine, 357. *Magill* v. *Heinsdale*, 6 Conn. 464. 3 Wash. R. Prop. (3 ed.) 360.

II. The requested instructions, Nos. 6, 7, 8, were sound law and well supported by authorities. *Knowles* v. *Toothaker, supra. Blaisdell* v. *Bissell,* 6 Penn. St. 258. *Thompson* v. *McFarland, Id.* 478. *Dawson* v. *Mills,* 32 *Id.* 302. *Ogden* v. *Porterfield,* 34 *Id.* 191. *Ken. Purchase* v. *Tiffany,* 1 Maine, 219. *Dunn* v. *Hayes,* 21 Maine, 76. *Blany* v. *Rice,* 20 Pick. 62. *Hale* v. *Dexter,* 10 Hump. (Tenn.) 92. *Richardson* v. *Chickering,* 41 N. H. 235. *Frost* v. *Spaulding,* 19 Pick. 445.

III. The instructions upon the point of punitive damages were erroneous. The rule is correctly stated in *Johnson* v. *Smith,* 64 Maine, 553, 554. To the same effect the following cases are cited: *Pike* v. *Dilling,* 48 Maine, 539. *Goddard* v. *Grand Trunk,* 57 Maine, 202. *Harmon* v. *Harmon,* 61 Maine, 233.

No case can be found where the court has decided that the plaintiff is entitled, or has a legal right, to punitive damages; the whole matter is left to the discretion of the jury to find punitive damages or not, even if they find the acts to have been committed maliciously.

LIBBEY, J. In 1822 Isaac Hilton, Sr., the father of Andrew Hilton and Isaac Hilton, Jr., owned a large farm in Jefferson, with a county road running through it. His dwelling house and farm buildings were situated on the west side of the county road, with a lane or leading way from the road to them. March 15, 1822, he conveyed the principal part of his farm lying on the west side of the county road, including his dwelling house and farm buildings, to his son Andrew. So far as material to the rights of the parties in this case, the boundaries and description of the premises in the deed are as follows : " To the Great Spring bridge, at the middle of the highway ; then, as the highway runs, north thirty-seven degrees east twenty-eight poles, and north twenty-seven degrees east fourteen poles, to the road leading from the highway to said Andrew's house ; then, in said road, northwest twenty and a half poles to the fence near said Andrew's shed ; then north three degrees west seven and a half poles to a white oak tree in old fence." The oak tree referred to was standing at the time of the trial, and there was no controversy between the parties as to

that monument; but it was claimed that there had been some change in the shed, and the precise location of the shed and the fence near it, referred to in the deed, was in controversy; and also the exterior lines of the lane or leading way, as located at the time of the conveyance.

Soon after the conveyance to Andrew, Isaac Hilton built a dwelling house and farm buildings on the east side of the county road, which he occupied, and April 9, 1826, he conveyed that part of his farm not conveyed to Andrew to his son Isaac, Jr., bounding the premises, so far as is in controversy, by Andrew's land.

The parties agree that the premises conveyed by Isaac Hilton to Andrew, so far as involved in this case, are owned by the plaintiff; and the premises conveyed by him to Isaac, Jr., are owned by the defendant, except so far as the dividing line may have been affected by the acts of the parties at the time of the conveyance from John Trask to the plaintiff May 12, 1866.

The acts of trespass complained of were mainly done on the north half of the lane, and between the lines respectively claimed by the parties as the boundary line between their lands. This statement of the case is deemed material as bearing on the question of the construction of the deed from Isaac Hilton to Andrew Hilton.

It is claimed by the plaintiff that by the true construction of that deed the location of the dividing line upon the face of the earth is to be found by measuring from the point at Great Spring bridge in the middle of the highway, by the courses named in the deed, the distance of forty-two rods to a point in the lane, and thence in the lane northwest twenty and a half rods to the fence near the shed, and thence, by the course given, seven and a half rods to the white oak tree.

On the part of the defendant it is claimed that the first call in the deed of forty-two rods by the courses named, to the road, goes to the center of the lane, and the second call, " then in said road northwest twenty and a half poles to the fence near said Andrew's shed," bounds the plaintiff by the center of the lane the given distance to a point opposite the fence near the shed; and that from that point the line runs by the course given to the white oak

tree ; that the deed should receive the same construction, as far as the lane is an element of the description, as it should if the bound had been by a highway ; and several requests for instructions were made by the defendant's counsel based upon this theory, which were not given ; and to the refusal to give the requests, and to the charge of the judge on this point, exceptions are taken.

The great rule for the interpretation of written contracts is that the intention of the parties must govern. This intention must be ascertained from the contract itself, unless there is an ambiguity ; and then evidence *aliunde* may be received and considered, so far as it has a legitimate tendency to show such intention. In ascertaining the meaning of the parties as expressed in the contract, all of its parts and clauses must be considered together, that it may be seen how far one clause is explained, modified, limited or controlled by the others.

In the description of the premises conveyed in a deed, monuments named, if they can be found, control courses and distances. If the monuments cannot be found, then courses and distances may govern; and in all cases where the location of the monument upon the face of the earth is in doubt, or there is more than one monument which will answer the call in the deed, courses and distances given may be resorted to as important in ascertaining the true location of the monument called for by the deed. These rules are so familiar and so well established that no citation of authorities is needed.

The main question raised by the requests for instructions is whether a deed, bounding the premises by a lane or leading way used by the grantor between his dwelling house and the highway, over his own land, and in which no one else has any rights, carries the fee to the center of such way. We think the established rule in this state is that it does not, but that the fee is limited to the side line of the lane. *Bangor House* v. *Brown,* 33 Maine, 309. None of the reasons exist which are stated by the courts as the foundation of the rule that when a deed bounds the premises by a highway or a stream it conveys the fee to the center. *Johnson* v. *Anderson,* 18 Maine, 76. The reasons why the rule appli-

cable to a grant bounding the premises by a highway does not apply to a way like the one involved in this case are well and clearly stated by Shepley, C. J., in *Bangor House* v. *Brown*, *supra*, and it is unnecessary to repeat them here.

In Massachusetts the court has held that the rule applicable to a boundary by a highway extends to private ways. *Fisher* v. *Smith*, 9 Gray, 441. But the opinion is a *per curiam* opinion of a divided court, and no reason is given for extending the rule to private ways; and we must assume that the words " private ways " are used by the court in that case as embracing only ways over the land of the grantor in which third parties have a legal right of passage, as the way involved in that case was of that character. When the owner of the fee uses his land as a passage way for any purpose connected with his buildings, or the management of his farm, and no other person has any right of way in such passage way, it is not a way in the legal signification of the word.

If, however, *Fisher* v. *Smith* must be held to be in conflict with *Bangor House* v. *Brown*, we prefer to adhere to the rule established by our own court. This conclusion disposes of the defendant's requests for instruction upon this point.

We now come to the question, what is the true construction of the deed from Isaac Hilton to Andrew Hilton upon the point under consideration ? The first call is from a bound specified, by courses and distances, " to the road leading from the highway to said Andrew's house." If this call stood alone, as we have seen, the line would terminate at the south side of the lane. But the next call is " then, in said way, northwest twenty and a half poles to a fence near said Andrew's shed ; so that while the first call does not extend into the way at all, the next call starts in the way. It is admitted by the learned counsel for the defendant that the words " to the way " are terms of exclusion, and, unless by construction the line can be held to terminate in the center of the lane, are inconsistent with the next call, which starts " in the way," and that an ambiguity arises as to the point where the line terminates in the way. This being so, it becomes a question of fact for the jury to determine whether the bound is at the south line of the way or in the way ; and if in the way, at what point in it ; ·

and the courses and distances, which are stated with precision, become material, and the jury should consider them, as well as the other calls in the deed bearing upon the question, in determining where the line is located at that point upon the face of the earth ; especially as the location of the way at the time of the conveyance is in controversy.

From the point thus established, the line, by the second call, must be run in the lane, northwest, twenty and one-half rods, to the fence near the shed as located at the time of the conveyance ; and by the next call from that point by the course and distance named to the white oak tree ; and the location of the fence near the shed being in controversy, the course and distance from that tree to the point where the line strikes the fence become material.

The instruction of the presiding judge was substantially in accordance with this view of the question, and we think was correct.

The construction put upon the deed from Trask to the plaintiff by the judge is in accordance with the rule we have declared; but if not in all respects correct, the further instruction given to the jury, that Trask had no greater title than Andrew Hilton took by his deed, and could convey no greater title to the plaintiff, removed all ground of exception on the part of the defendant.

The next ground of exception is the refusal to give the requested instructions numbered six and seven, as to the effect of the acts of the parties in running and marking the lines just before making the deed in 1822, and to the instruction given on that point.

Neither of the requests is sound as a legal proposition, and could not have been properly given. The sixth request is, in effect, that, if before the deed was made the parties went upon the land and run and marked the lines, and the deed was made intended to embrace the same land, " and the locating and marking and the description in the deed do not agree, the locating will control." This request was based upon the evidence introduced by the defendant, tending to show that at the end of the line run from the highway in the lane northwest twenty and a half rods, a

stake was driven by the parties in the center of the lane; and, if the jury believed the evidence, would require them to substitute the stake for the "fence near the shed," clearly designated in the deed as the monument. And to illustrate the rule contended for by the defendant more clearly, if the parties to a conveyance, before making the deed, set up a stake as a corner, and in the deed a marked tree is designated as the corner, it would require the substitution, by parol evidence, of the stake for the tree clearly designated by the deed, though they may be rods apart. We do not understand that the rule goes to this extent.

It is only where there are two or more monuments upon the face of the earth, each of which answers to the call of the deed, that proof of the one erected by the parties will govern; or where the parties run a line as of a certain course and distance, and then make a deed calling for a line of the same course and distance, intending it as the line run, or where the deed conveys a part of a lot by a line which shall embrace a certain quantity, and the parties have run and marked the line as embracing the quantity called for, and in cases similar in principle, that the running and marking of the line will be conclusive, although it may be found in fact to be of a different course and length, or embrace more land, than the deed calls for. The clear and unambiguous calls of a deed cannot be set aside and different ones substituted in their place by parol proof of the acts of the parties, either before or after the deed is made. *Emery* v. *Fowler*, 38 Maine, 175. *Webster* v. *Emery*, 42 Maine, 204. *Madden* v. *Tucker*, 46 Maine, 367. *Knowles* v. *Toothaker*, 58 Maine, 172.

The seventh request is even more objectionable, as it does not embrace the element that the description in the deed was intended to embrace the land included within the lines run and marked by the parties.

We think the charge of the judge on this point was full, clear and correct, and stated the rule as strongly in favor of the defendant as he was entitled to have it.

The next exception is to the charge of the judge on the question whether the defendant was estopped to deny the location of the line as claimed by the plaintiff, by reason of his acts and

silence in regard to its location prior to the taking of her deed by the plaintiff.

The counsel for the defendant admit that the rule given to the jury by the judge is correct as a general proposition, and the only ground of exception pointed out is that the instruction did not require the jury to find that, at the time of the declarations and acts of the defendant relied on by the plaintiff, the defendant knew where the true dividing line was. Without examining the law upon the question involved, it is sufficient to say that the defendant was a witness and did not claim that he did not know, at the time, where the line in fact was; but on the contrary, he testified that it was pointed out to him, and that he then claimed it to be where he now claims it. There was no question raised between the parties as to his knowledge of the location of the line, but the contention between them was whether it was pointed out to the plaintiff, or her husband who acted for her, to be where she, or the defendant, now claims it to be. The judge was not required to instruct the jury as to the law upon a question not in contention between the parties.

Another ground of exception is the charge of the judge on the question of the effect of a notice or claim made to the plaintiff's husband, as to the location of the line, before she took her deed. It was conceded that the plaintiff, her husband and the defendant were present on the premises the day before the deed was made, and the evidence tended to show that the plaintiff's husband acted for her during the survey of the lines. The evidence was conflicting as to whether a claim was then made to the husband that the line was where the defendant now claims it to be. But if such claim was made to him, the evidence tended to prove that it was not communicated to the plaintiff, and that she was ignorant of it. The judge instructed the jury, in substance, that, if the plaintiff's husband was there acting for her as her agent, by her authority, in running and fixing the lines, and a claim was made to him by the defendant, it would be the same as if made to her, unless the defendant " still knew that that notice was not given to the plaintiff herself, and he still permitted her to go on and complete the purchase without making his title known to her. That

is to say, if he . . knew . . that the agent was not acting faithfully, was permitting her to pay for land which she was not to take; if he knew that, and knew that she was personally relying upon it, it would not excuse him for not making known to her his title." We think this was a correct statement of the rule of law applicable to the case.

The defendant also excepts to the charge on the rule of damages. The clauses of the charge complained of are as follows : " If he went on there with good reason to feel that he had title, acting honestly, although he would be liable for actual damages, he would not be liable for punitive damages. But if he went on there and committed the trespass wilfully, wantonly or maliciously, you would be entitled to add to the actual damages just such amount as, in your sound discretion and good judgment, taking all the circumstances of the case, all the effects necessarily connected with the act, he ought to pay, and she ought to receive, as a punishment for his wrong doing." Again, " so that, if he went on there in this way, with a vindictive disposition, for the purpose of doing her harm wantonly, without regard to her rights, in a reckless manner, then she would be entitled to recover, as I said before, just that amount, in addition to actual damages, which in your sound discretion and good judgment you think, under all the circumstances of the case, he ought to pay as a punishment for his wrong doing."

It is claimed that this instruction was, in effect, directing the jury that they must give punitive damages if they found the trespass willful, wanton or malicious; when the true rule is that the jury may, in their discretion, if they think proper in such case, award punitive damages.

We think the language used could not have been so understood by the jury. It must be presumed that the jury understood the words used in their common and popular meaning, and not in their strict legal sense. The common definition of the verb entitle, when used in such connection, is " to give a right or claim to."

In the first clause the words " be entitled " were used in the same sense as the words "have a right," and thus read, the jury

were told that they had a right to add to the actual damages just such amount as, in their sound discretion and good judgment, under all the circumstances, the defendant ought to pay and the plaintiff ought to receive. This is certainly unobjectionable.

Giving the same meaning to the word " entitled " in the second clause the jury were told that, if they found the facts as stated by the judge the plaintiff had a right to recover just that amount in addition to actual damages which in their sound discretion and good judgment, they thought under all the circumstances of the case the defendant ought to pay as a punishment for his wrong doing. This, certainly, was not a direction to the jury that they must, as matter of law, give the plaintiff some amount as punitive damages, but taking the language together the whole matter of punitive damages was submitted to their sound discretion and good judgment.

It was unobjectionable to say to the jury that if they found the trespass willful, wanton, or malicious, the plaintiff had a right to recover, or receive such sum as punitive damages as they, in the exercise of a sound discretion, might see fit to award her. It is difficult to perceive what legal right a jury has to award to a plaintiff damages which he has no right to recover. The plaintiff's right to recover is dependent upon the discretion of the jury, and taking the charge on this question as a whole, that is its obvious meaning.

We see no cause to disturb the verdict on the ground that it is against the evidence, or that the damages are excessive.

*Exceptions and motion overruled.*

APPLETON, C. J., DANFORTH, VIRGIN and PETERS, JJ., concurred.