Stephen **PALMER**
and
Velma S. Palmer, Plaintiffs,

v.

Arthur E. **NISSEN**, Defendant.

Civ. No. 8–116.

United States District Court
D. Maine, S. D.

July 14, 1966.

Leonard M. Nelson, Portland, Me., Daniel O. Mahoney, Boston, Mass., for plaintiffs.

William B. Mahoney, Portland, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action to recover damages claimed to have been caused to the plaintiffs by the alleged negligence of the defendant, a member of the bar of the State of Maine engaged in the general pratice of law in Damariscotta, Maine, in certifying the title to two parcels of real estate located in Bremen, Maine.[1] The first parcel involved is the so-called Ozone Point property which plaintiffs purchased from the heirs of Ralph W. Bartlett [2] by deed dated February 2, 1959 (P.4), pursuant to a purchase and sale agreement dated December 2, 1958 (P.2). The second parcel is the so-called mainland property which plaintiffs purchased from Anna B. Zahn by a second deed dated February 2, 1959 (P.3), pursuant to a purchase and sale agreement dated December 2, 1958 (P.1). Plaintiffs contend that defendant was negligent in certifying the title to both properties because of various asserted defects in the record title, and that defendant was negligent in certifying the title to the mainland property because the property conveyed by their deed was substantially less than that described in the purchase. and sale agreement.[3]

At pre-trial conference the parties agreed that the issues of liability presented by the action be determined by the Court, without jury, in advance of any hearing upon the damage issues. Fed.R.

1. Plaintiffs are residents of Hamilton, Massachusetts, and the jurisdiction of this Court is based upon 28 U.S.C. § 1332(a) (1).

2. Anna B. Zahn, Ralph W. Bartlett (Jr.) and Elizabeth Bartlett.

3. It is undisputed that defendant prepared the purchase and sale agreements and deeds, and also examined, abstracted, and certified the title to both properties as being in the respective grantors "free and clear of all encumbrances." (P. 5, 6 and 7). Although defendant represented both the plaintiffs and the sellers in these transactions, plaintiffs raise no question as to the propriety of his having done so, since he made a full disclosure of his multiple representation to all the parties concerned.

Civ.P. 42(b). The parties further agreed that the only issues of liability are the following:

(1) With respect to both properties, whether the title was defective at the time of their purchase by reason of the title defects asserted by plaintiffs.

(2) With respect to the mainland property, whether the area conveyed to plaintiffs by the deed from Anna B. Zahn was substantially less than that described in the purchase and sale agreement.[4]

Having received and considered the evidence and the written and oral arguments submitted by the parties with respect to the foregoing two liability issues, the Court's findings of fact and conclusions of law appear in this opinion. Fed. R.Civ.P. 52(a).

*I*

*Asserted Title Defects*

Plaintiffs contend that the title to both properties was defective at the time of their purchase by reason of the following defects in the record title:

(1) There was no record in the Lincoln County (Maine) Registry of Deeds, or elsewhere in the State of Maine, of a plan of the Ozone Point property referred to in the deed of Winfield S. Keene to Ralph W. Bartlett dated September 29, 1906 (P.9).[5]

(2) There was no record in the Lincoln County Registry of Deeds, or elsewhere in the State of Maine, of the probate of the estate of Ralph W. Bart-

lett, nor was there any record showing the date of Ralph W. Bartlett's death.

(3) There was no record in the Lincoln County Registry of Deeds or elsewhere in the State of Maine, showing that any inheritance tax due the State of Maine from the estate of Ralph W. Bartlett had been paid, or that there was no inheritance tax payable.

(4) There was no record in the Lincoln County Registry of Deeds, or elsewhere in the State of Maine, showing that the three grantors who executed the deed to plaintiffs of the Ozone Point property were all of the heirs of Ralph W. Bartlett having an interest therein.

(5) There was no record in the Lincoln County Registry of Deeds, or elsewhere in the State of Maine, of a property settlement dated March 28, 1952, between Bernard T. Zahn and Anna B. Zahn (P.25), which was made part of a decree of divorce entered by the Lincoln County Superior Court on May 13, 1952 (P.23), the lack of any such record making it impossible to ascertain whether the subsequent release deeds exchanged between Mr. and Mrs. Zahn (P.18 and 19) were consistent with the settlement approved by the court.

It is conceded that the record title to the properties involved was in fact deficient in the above respects. Defendant admitted the omissions from the record, but testified that in his title examination he did not regard as a material defect the

4. It is expressly stipulated that if both of these issues are resolved in favor of defendant, judgment is to be entered for defendant dismissing the action; but that if either issue is determined in favor of plaintiffs, the Court is to enter judgment for plaintiffs in the amount of their resulting damages, to be determined after further hearing.

5. By this deed, the grantor conveyed all his right, title and interest "in and to the real estate belonging to me situate in said town of Bremen." The deed then recites that "The granted premises are further described by reference to * * * (five prior deeds in the chain

of title) * * * and by reference to a plan of the Homestead Farm of Daniel Keene, late of said Bremen deceased made by Thomas Simmons, surveyor of land, dated Nov. 1841. Said plan is not recorded and is in the custody of Sarah C. Keene of said Bremen." In the prior deeds the premises are variously described as "Also the neck, so called * * *." (P. 7 at p. 10); "Also the 'Neck' so called, containing 8 acres more or less and principally bounded by water." (P. 7 at p. 18); and "Abdon Keene homestead, excepting small lots sold off same by said Abdon Keene." (P. 7 at p. 26).

absence of any record of the plan of Ozone Point referred to in the 1906 deed from Winfield S. Keene to Ralph W. Bartlett, although in fact he did examine a copy of this plan which he happened to have in his office (P.24). Defendant further testified that he relied upon recitals in prior deeds to establish that Ralph W. Bartlett was dead and had died more than ten years prior to the date of defendant's examination, and that all Ralph W. Bartlett's surviving heirs had joined in the deed to plaintiffs.[6] He testified that he did not regard as a material defect the absence of any record showing payment of any inheritance tax owed by the estate of Ralph W. Bartlett to the State of Maine, relying upon the ten-year statute of limitations upon inheritance tax liens contained in the Maine inheritance tax law. Me.Rev.Stat. ch. 155, § 18 (1954), as amended; Me.Rev. Stat. ch. 272 (1955); Me.Rev.Stat. ch. 429, § 89 (1957).[7] Defendant also testified that he did not regard as a material defect the lack of any record of the March 1952 property settlement between Bernard T. Zahn and Anna B. Zahn (although he also had a copy of this settlement in his office). To establish that the release deeds exchanged between Mr. and Mrs. Zahn (P.18 and 19) were consistent with the settlement approved by the court (P.25), he relied upon the decree of divorce (P.23) and an order

granting Mrs. Zahn's petition for immediate execution of the divorce decree (D.3) both dated May 13, 1952, and of record in the office of the Clerk of the Lincoln County Superior Court, together with the fact that the release deeds were executed immediately thereafter on May 14, 1952.

Plaintiffs offered no evidence in support of their contention that the record deficiencies which they now raise rendered their title insufficient or otherwise unmarketable, or that defendant was in any way negligent in his examination or certification of the titles involved.[8] On the other hand, defendant produced the testimony of two experienced attorneys engaged in the general practice of law and having substantial conveyancing practices in Wiscasset and Boothbay Harbor, Maine. Both stated, without contradiction, that in their opinion the title to both properties was good and merchantable as of the date the deeds were delivered, and that none of the record deficiencies would be considered material defects affecting the marketability of title under the title standards prevailing among conveyancers in Lincoln County in January and February 1959.[9] With reference to the effect of the specific deficiencies in the record relating to plaintiffs' titles, both witnesses agreed that a reference to an unrecorded plan in a deed in a chain of title would not constitute a

6. More specifically, defendant testified that he relied upon a series of four quitclaim deeds from Curry M. Bartlett, Ralph Wilbur Bartlett, Jr., Elizabeth Weston Bartlett and Anna Bartlett Zahn to Anna C. Bartlett (P. 10, 11, 12 and 13) and a series of four quitclaim deeds from Anna C. Bartlett to Ralph Wilbur Bartlett, Jr., Elizabeth Weston Bartlett, Anna Bartlett Zahn and Bernard T. Zahn (P. 14, 15, 16 and 17), all dated June 20, 1949; and particularly upon a deed of the so-called Dewyea lot dated May 6, 1950 by the Ralph W. Bartlett heirs to Anna C. Bartlett, which contained the following recital: "Our interest * * * is derived as heirs at law of Ralph W. Bartlett, late of Bremen, deceased * * *. The purpose of this deed is to place the entire title of said parcel in the name of Anna C. Bartlett." (P. 7 at p. 36).

7. In fact, Ralph W. Bartlett died on January 21, 1930. At the time of his death he was a resident of Newton, Massachusetts, and his estate was probated in the Middlesex County, Massachusetts, Probate Court. (P. 27).

8. The only witness called by plaintiffs upon this issue was an attorney engaged in the general practice of law in Boothbay Harbor, Maine. Although he testified to a substantial conveyancing practice, he was unable to express an opinion as to the generally accepted standards of Lincoln County conveyancers.

9. Bremen, Damariscotta, Wiscasset and Boothbay Harbor are all situated in Lincoln County, Maine.

material defect unless the plan was made an integral part of the description of the property, and that there was nothing in the language of the 1906 deed from Winfield S. Keene to Ralph W. Bartlett which made the unrecorded plan an integral part of the description. See n. 5, supra. They further testified that it was an accepted practice among Lincoln County attorneys in searching titles to rely upon recitals in prior deeds to establish the death of a prior owner, the date of his death, and the identity of his surviving heirs; that the lack of any record of payment of a State of Maine inheritance tax by the estate of a deceased owner, who had died more than ten years previously, would not constitute a material defect when the controlling inheritance tax statute contained a ten-year statute of limitations on the tax lien; and that the lack of record of a property settlement in connection with a divorce proceeding would not constitute a substantial title defect, it being unnecessary for a conveyancer to go beyond the record found in the Registry of Deeds unless he has notice that there may be a court record which might affect the title.

█ From the foregoing recital of the uncontroverted evidence in this case, it is evident that plaintiffs have wholly failed to satisfy their burden of establishing that the titles to the properties here involved were defective, or that in examining and certifying the titles de-

fendant failed in any respect to exercise the care and skill required of an attorney engaged in the general practice of law in Damariscotta, Maine.[10] As the Maine court has stated with respect to the duty of care which an attorney owes to his client,

"The attorney is bound to execute business in his profession entrusted to his care, with a reasonable degree of care, skill, and despatch (sic). If the client be injured by the gross fault, negligence, or ignorance [11] of the attorney, the attorney is liable; but if he act with good faith, to the best of his skill, and with an ordinary degree of attention, he will not be responsible." Wilson v. Russ, 20 Me. 421, 424 (1841).

See also: Timberlake v. Crosby, 81 Me. 249, 16 A. 896 (1889); cf. Coombs v. King, 107 Me. 376, 378, 78 A. 468 (1910).

█ Being satisfied that under the conveyancing standards prevailing in Lincoln County, Maine in January and February 1959, the title defects asserted by plaintiffs did not constitute material defects, and that defendant in certifying the titles to the properties involved acted "with good faith, to the best of his skill, and with an ordinary degree of attention, * * *" the Court holds that defendant was not negligent in certifying the titles by reason of the record deficiencies asserted by plaintiffs.[12]

10. The parties agree that defendant's duty, as an attorney, to plaintiffs, as his clients, must be measured by the standards of professional conduct prevailing in the community in which he did his work. Gleason v. Title Guarantee Co., 317 F.2d 56, 60 (5th Cir. 1963); cf. Davis v. Virginian Ry., 361 U.S. 354, 357, 80 S.Ct. 387, 4 L.Ed.2d 366 (1960).

11. Plaintiffs do not suggest that defendant acted fraudulently or in bad faith.

12. In accordance with the request of the parties, the Court further finds and rules that any defects which might have existed at the time of the purchase have been corrected by the filing for record with the Lincoln County Registry of Deeds, since this suit started, of the following documents:

1. Copy of 1841 Simmons Plan of the Homestead Farm of Daniel Keene, made by Ralph W. Bartlett September 5, 1906 (P. 24).
2. Extracts from 1952 property settlement between Anna S. B. Zahn and Bernard T. Zahn, certified by Anna S. B. Zahn November 2, 1965 (P. 25).
3. Affidavit of Anna Bartlett Zahn dated October 20, 1965, certifying that Ralph W. Bartlett died, a resident of Newton, Massachusetts, on January 21, 1930, survived by his widow Anna C. Bartlett and by Anna Bartlett Zahn, then named Anna Sylvia Bartlett, Elizabeth Weston Bartlett, Ralph W. Bartlett, Jr. and Curry McLeod Bartlett, as his only heirs at law (P. 26).
4. Copies of the original probate records concerning the estate of Ralph W.

## II

### Asserted Discrepancy between Purchase and Sale Agreement and Deed of Mainland Property

Plaintiffs contend that the area conveyed to them by the deed from Anna B. Zahn of the mainland property (P.3) was substantially less than that described in the purchase and sale agreement (P.1). Their claim is that the deed did not include a point of land extending into Muscongus Sound and approximately 3.7 acres of backland, which was included in the purchase and sale agreement and a major consideration of their purchase.[13] Defendant's position is that the deed conveys the same land as that described in the purchase and sale agreement. The controversy relates to the true location of the southeasterly boundary of the land described in the purchase and sale agreement.

So far as material, the descriptions contained in the purchase and sale agreement and the deed are as follows:

After describing the northeasterly boundary of the land to be conveyed from a starting point on the shore of Greenland Cove to the northwesterly corner of land of the Audubon Society, the purchase and sale agreement continues:

"Thence in a general southwesterly direction by the land of said Audubon Society to the shore of Muscongus Sound;

"Thence in a general southwesterly and then northerly direction by the waters of said Muscongus Sound to the point of beginning.

"EXCEPTING, HOWEVER, the point known as 'Ozone Point' lying to the westward of the above described parcel."

After a substantially identical description of the northeasterly boundary of the land conveyed from the starting point on the shore of Greenland Cove to the northwesterly corner of the Audubon Society land, the deed continues:

"Thence South 50°45' West by land of said Audubon Society, one thousand three hundred seventy-eight (1,378) feet, to an iron pipe set in the ground near high-water mark on the easterly shore of Muscongus Sound; Thence northerly by said shore as it runs, to a neck of land called "The Neck"; Thence North 1°0' East, ninety (90) feet, more or less, crossing said Neck to the easterly shore of Greenland Cove; Thence northerly by said shore to the point of beginning. Containing nine and 51/100 (9.51) acres, more or less. TOGETHER WITH the adjoining shore, rocks and flats to low water line."

There is no dispute as to the land conveyed by the deed. As shown on the Pierce plan (D.4), the true southeasterly boundary of the land then owned by Mrs. Zahn and conveyed by her to plaintiffs by the deed extends from the northwesterly corner of the land owned by the Audubon Society southwesterly by the Audubon Society land to an iron pipe set in the ground at a point on the easterly shore of Muscongus Sound, which is northerly of the disputed point of land.[14] The parties agree that the southeasterly boundary described in the deed is the true Audubon line, and that the deed description definitely excludes the 3.7 acre parcel which is in dispute.[15]

Bartlett filed in the Middlesex County, Massachusetts Registry of Probate, certified by Alex Prasinos, attorney, October 5, 1965 (P. 27).

13. The disputed area is the pie-shaped parcel consisting of 3.7 acres, more or less, shown on the Pierce plan (D. 4).

14. The Pierce plan shows this course as South 48°51'27" West 1350.82', which varies slightly from the deed course of South 50°45' West 1378'.

15. That the deed described the true southeasterly boundary of the land owned by Mrs. Zahn is evident from an examination of the prior deed of the National Audubon Society to Bernard T. Zahn dated January 13, 1949 (P. 21) and the deed of Bernard T. Zahn to Anna B. Zahn dated May 14, 1952 (P. 18, Third Parcel). The

The dispute between the parties narrows down to the question of whether the true Audubon line as described in the deed was the southeasterly boundary of the land to be conveyed referred to in the purchase and sale agreement. On this question it is claimed by plaintiffs that the language of the purchase and sale agreement is ambiguous because it is impossible to apply the description to the face of the earth, and that, under accepted principles, resort may be had to parol evidence to resolve the ambiguity by showing the actual intent of the parties at the time the agreement was executed. Such evidence, they contend, establishes conclusively that the southeasterly boundary referred to in the purchase and sale agreement was not the true Audubon line described in the deed, but a line which the parties mistakenly believed to be the dividing line between the land owned by Mrs. Zahn and that owned by the Audubon Society. This line lay southeasterly of the true Audubon line and included the disputed 3.7 acre parcel within the description of the property to be conveyed.[16] Defendant, on the other hand, claims that there is no ambiguity in the language of the agreement because the call running southwesterly by the land of the Audubon Society can only refer to the true Audubon line, and that since the description of the premises to be conveyed is thus clear and unambiguous, parol evidence is not admissible to modify it.

█ There is no essential disagreement between the parties as to the applicable legal principles. As stated by the Maine court,

"The great rule for the interpretation of written contracts is that the intention of the parties must govern. This intention must be ascertained from the contract itself, unless there is an ambiguity; and then evidence

*aliunde* may be received and considered, so far as it has a legitimate tendency to show such intention. In ascertaining the meaning of the parties as expressed in the contract, all of its parts and clauses must be considered together, that it may be seen how far one clause is explained, modified, limited or controlled by the others." Ames v. Hilton, 70 Me. 36, 43 (1879).

"In construing a deed, the first inquiry is, what was the intention of the parties? This is to be ascertained primarily from the language of the deed. If this description is so clear, unambiguous, and certain, that it may be readily traced upon the face of the earth from the monuments mentioned, it must govern; but when, from the courses, distances, or quantity of land given in a deed, it is uncertain precisely where a particular line is located upon the face of the earth, the contemporaneous acts of the parties in anticipation of a deed to be made in conformity therewith, or in delineating and establishing a line given in a deed, are admissible to show what land was intended to be embraced in the deed." Knowles v. Toothaker, 58 Me. 172, 175 (1870). (Quoted with approval in Wentworth v. LaPorte, 156 Me. 392, 400–401, 165 A.2d 55 (1960)).

"Here the facts when produced reveal a latent ambiguity, an uncertainty as to which of two claimed town lines was the actual starting point in the contemplation of the parties, and as bearing on that question the acts of the parties are of compelling force in determining the true construction." Borneman v. Milliken, 123 Me. 488, 492, 124 A. 200, 202 (1924).

In this respect the law of Maine is in accord with the law elsewhere. As stated by the Massachusetts court,

description in these deeds is substantially identical with that contained in the deed of Mrs. Zahn to plaintiffs.

16. This line is shown on the Pierce plan (D. 4) as a traverse line extending from an iron pipe in concrete at the north-

westerly corner of the Audubon Society land South 40°40'39" West 1353.93' to an iron pipe in concrete at a point on the easterly shore of Muscongus Sound, which is southerly of the point of land in dispute.

"The general rule is settled and familiar that, when the description of granted premises in a deed is clear, extrinsic evidence is not admissible to control or modify it. It is only when such description is uncertain through latent ambiguities, either in the meaning of the words or *in their application to the face of the earth,* that resort may be had to such evidence to resolve existing obscurities." (Citations omitted.) (Emphasis supplied.) Hirsch v. Fisher, 278 Mass. 492, 495, 180 N.E. 230, 231 (1932).

■ Application of these accepted principles to the present question requires initially a consideration of the language of the purchase and sale agreement to determine whether there exists an ambiguity which permits resort to parol evidence to show the intention of the parties when they executed the agreement. The first call in issue reads, "Thence in a general southwesterly direction by the land of said Audubon Society to the shore of Muscongus Sound." If this call stood alone, the bound would clearly be the true Audubon line, which can be identified on the face of the earth. As defendant contends, the description would be clear and unambiguous, and no parol evidence would be admissible to contradict it. Ames v. Hilton, supra, 70 Me. at 46. But the first call does not stand alone. The next call is, "Thence in a general southwesterly and then northerly direction by the waters of said Muscongus Sound to the point of beginning." When this call is applied to the face of the earth, it is apparent that the first call cannot refer to the true Audubon line. As is evident from an examination of the Pierce plan (D. 4), if the first call refers to the true Audubon line, it is impossible to follow the second call "in a general' southwesterly and then northerly direction *by the waters of said Mus-*

*congus Sound."* (Emphasis supplied.) The southwesterly direction in this call would then lead out into the waters of Muscongus Sound and beyond to some undetermined point. If the first call refers to the true Audubon line, the description simply cannot be applied to the face of the earth.

Defendant argues that the second call was intended to continue the first call in a southwesterly direction from the high-water line to the low-water line or Muscongus Bay, and thence in a northerly direction by the low-water line to the point of beginning. But the plain meaning of the words used in the second call does not permit this tortured construction. By any reasonable grammatical construction of the language used, both the "general southwesterly" and the "northerly" directions in this call are modified by the phrase "by the waters of said Muscongus Sound." As plaintiffs point out, this call says, and can only mean, in a general southwesterly direction *by the waters* of Muscongus Sound and then in a northerly direction *by the waters* of Muscongus Sound. The conclusion is inescapable that if the first call refers to the true Audubon line, the second call cannot be applied to the face of the earth. The inconsistency between the two calls gives rise to an ambiguity, which requires for its resolution the consideration of any parol evidence which may show the intention of the parties when they executed the agreement.

The only evidence offered of the intention of the parties was the testimony of plaintiff Stephen Palmer. He testified that in the fall of 1958 he and Mrs. Palmer walked over the property with Mrs. Zahn. Mrs. Zahn showed them first the approximate location of the upper marker of the southeasterly boundary of her land.[17] She then took plaintiffs

17. Mr. Palmer testified that Mrs. Zahn was unable to find that marker itself, but that it was subsequently located. It was identified by Mr. Palmer as the marker shown as "I.P." at the end of the course shown as North 40°15′ West-180′ on the Hulen plan (P. 29).

along the northeasterly boundary of her land to a pine tree on the shore of Muscongus Sound, which marked the extreme northerly limit thereof.[18] From this point the parties proceeded southerly along the shore, across the causeway leading to Ozone Point, and around the disputed point of land to a cement marker near the high-water line, which Mrs. Zahn identified as the lower marker of the southeasterly boundary of her land.[19] Mr. Palmer further testified that on or about December 1, 1958 he and Mrs. Palmer met with Mrs. Zahn and defendant in the defendant's office for the purpose of executing the purchase and sale agreement. At this time plaintiffs were shown the Hulen plan (P.29) and a copy of the Lyons plan (P.28),[20] which were used to identify the boundaries of the property owned by Mrs. Zahn and to be conveyed by her to plaintiffs. The copy of the Lyons plan which was used in defendant's office erroneously showed the southeasterly boundary of Mrs. Zahn's land as a line extending from the northwesterly corner of the Audubon Society land South 41° West 1361' to a cement marker on the shore of Muscongus Sound, which was southerly of the disputed point of land.[21] This line definitely included within Mrs. Zahn's land the 3.7 acre parcel which is presently in dispute. And in Mr. Palmer's own words, " * * * the use of this plan was to show us the lines of the property coming down south around the point and to this marker."

Defendant now argues that Mr. Palmer was mistaken in his testimony. But defendant offered no evidence to contradict or otherwise to impeach him. As plaintiffs point out, the unexplained failure of defendant to offer any evidence as to the negotiations between the parties and as to the plans used by them in his office at the time of the execution of the agreement warrants the inference that any such evidence would have been adverse to defendant's position. 2 Wigmore, Evidence § 285 et seq. (3d ed. 1940). This record not only justifies, but compels, such an inference. Defendant's counsel had designated Mrs. Zahn, who was obviously a key witness, as a witness for defendant two days prior to the commencement of the trial, and twice during the first day of the trial he referred to her proposed testimony. Yet she was not called as a witness, nor was any explanation offered of his failure to call her. Cf. Wright v. Bubar, 151 Me. 85, 91, 115 A.2d 722 (1955). Defendant was also present in the court room throughout the trial, but did not testify for the defense. Surely, if Mr. Palmer was mistaken as to the plans used by the parties in defendant's office, it was incumbent upon defendant to take the stand and to testify as to his version of what had transpired. His unexplained failure even to offer

18. The pine tree is shown on the Lyons plan (P. 28) at the end of the course North 65°30' West 238.0'.

19. The parties have stipulated that this cement marker is the same iron pipe set in concrete which is shown on the Pierce plan (D. 4) as the iron pipe at the end of the traverse line on the shore of Muscongus Sound.

20. The copy of the Lyons plan used in defendant's office was an earlier copy of P. 28. Mr. Palmer testified that the copy so used was substantially the same as P. 28, the only presently material difference being that the area of Mrs.

Zahn's land was shown as "13 and a fraction" acres, rather than as the 9.51 acres shown on P. 28. He also testified that the legend "Land formerly of Zahn now of S. Palmer" and the pipe markers shown on P. 28 did not appear on the copy of the Lyons plan used in defendant's office.

21. This line is the traverse line shown as South 40°40'39" West 1353.93' on the Pierce plan (D. 4). As set forth above, the parties have stipulated that the iron pipe on the shore of Muscongus Sound at the end of this line is the cement marker on the shore of Muscongus Sound referred to in Mr. Palmer's testimony.

himself as a witness and to deny Mr. Palmer's testimony can reasonably lead to only one conclusion—that, his testimony, if truthful, would have corroborated, rather than contradicted, Mr. Palmer. Cf. Scribner v. Cyr, 148 Me. 329, 333–334, 93 A.2d 126 (1952); Union Bank v. Stone, 50 Me. 595, 599–601 (1862).

■ It is evident from Mr. Palmer's uncontradicted testimony that it was the understanding of all those present in defendant's office on or about December 1, 1958—plaintiffs, Mrs. Zahn and defendant—that the southeasterly boundary of Mrs. Zahn's property was not the true Audubon line, but the line erroneously shown on the Lyons plan as the dividing line between the land owned by Mrs. Zahn and that owned by the Audubon Society. On this record, the Court can only conclude that when in the purchase and sale agreement the parties identified the southeasterly boundary of the property to be conveyed as "the land of said Audubon Society," their intention was to refer to the erroneous Audubon line shown on the incorrect plan they used in preparing the agreement. The effect of this error was to include within the land to be conveyed as described in the agreement the 3.7 acre parcel in dispute, which the parties concede was not owned by Mrs. Zahn and was not included in the land conveyed to plaintiffs by their deed.

■ The Court holds that the area conveyed to plaintiffs by the deed from Anna B. Zahn of the mainland property (P.3) was substantially less than that described in the purchase and sale agreement (P.1). In accordance with the stipulation of the parties, judgment will therefore be entered for plaintiffs against defendant in the amount of the resulting damages sustained by them. The action will be assigned for further pre-trial conference and trial, upon the damage issues thus presented, at the fall 1966 trial session of this Court, the parties to be ready therefor by September 12, 1966.

It is so ordered.