**WILLIS REALTY ASSOCIATES, et al.**

v.

**CIMINO CONSTRUCTION COMPANY.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1992.

Decided April 27, 1993.

Jeffrey D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for plaintiffs.

James M. Bowie (orally), Thompson & Bowie, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Cimino Construction Company appeals from a judgment entered after a nonjury trial in the Superior Court (Cumberland County, *Perkins, J.*) in favor of Willis Realty Associates and Maine Printing and Business Forms Company for recovery of property damages resulting from a construction collapse. Cimino contends that the court erred in concluding that (1) the claims of Willis Realty and Maine Printing were not barred by a contractual waiver of subrogation provision and (2) Cimino was not immune from suit as a co-insured under Willis Realty's and Maine Printing's property insurance policy. We affirm the judgment in favor of Maine Printing, but because the Superior Court erred in concluding that the contractual waiver of subrogation did not bar Willis Realty's claim against Cimino, we vacate the judgment in favor of Willis Realty.

Willis Realty, a general partnership, owns commercial property in Portland that is leased to Maine Printing, a Maine corporation. Robert Willis is the managing partner of Willis Realty and the president of Maine Printing. The leased building was originally constructed in 1980 by Cimino and was designed to accommodate a subsequent addition. In 1986, Willis Realty, through Robert Willis,[1] contracted with Cimino to build the addition. The parties signed a standard American Institute of Architects (AIA) form construction contract that provides that the owner and the contractor waive all claims for damages "to the extent covered by insurance obtained pursuant to this [contract] or any other property insurance applicable to the work." Subsequently, by letter, the parties altered the contract to require Cimino, the contractor, rather than Willis Realty, the property

owner, to maintain property risk insurance on the "entire work at the site" (commonly known as "builder's risk insurance"). No change, however, was made in the waiver provision. Cimino did not procure the builder's risk insurance until November 1, 1986, and, under the terms of that policy, any prior damage to the existing building was not covered. Willis Realty and Maine Printing continued to maintain a general business and property liability insurance policy with their insurer, Royal Globe Insurance Company, on the lot and the existing building.

In October of 1986, the excavation by Cimino in preparation for construction of the addition caused a collapse in the rear wall of the existing building. Royal Globe paid the losses incurred by its insureds, Willis Realty and Maine Printing, respectively.

I.

WAIVER OF SUBROGATION

▰▰▰▰ The construction of an unambiguous written contract, and the terms of such a contract, is a question of law. *Hopewell v. Langdon*, 537 A.2d 602, 604 (Me.1988). Whether a contract is unambiguous is also a question of law. *Id.* Only when the language of a contract is ambiguous or uncertain is its interpretation a question of fact to be determined by the factfinder. *F.O. Bailey Co., v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me.1992).

▰▰▰ Under Article 11.3.6[2] of the contract, the parties waived all claims for damages covered by insurance obtained pursuant to Article 11.3, or "any other property insurance applicable to the work." Such clauses have been liberally construed. *See Village of Rosemont v. Lentin Lumber Co.*, 144 Ill.App.3d 651, 98 Ill.Dec. 470, 475, 494 N.E.2d 592, 597 (1986); *Haemonetics Corp. v. Brophy & Phillips Co., Inc.*, 23

---

1. *See infra* Part II.

2. Article 11.3.6 reads in pertinent part:
   The Owner and Contractor waive all rights against ... each other ... for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to Paragraph 11.3 or any other property insurance applicable to the Work except such rights as they may have for the proceeds of such insurance held by the Owner, as trustee.

Mass.App. 254, 501 N.E.2d 524, 526 (1986). Here, "the Work" is defined in Article 1.1.3 of the contract as comprising the "completed construction required by the contract documents." The construction contract involved an addition *attached* to the existing building at its back wall. That back wall was therefore an integral part of the project.

By its plain language, Article 11.3.6 bars subrogation recovery between the parties to the contract for damages to the extent covered by insurance. Royal Globe's complaint seeking recovery for damages paid to Willis Realty should have been dismissed.

## II

### MAINE PRINTING AS CONTRACTING PARTY

■ The court did not err, however, in concluding that the contractual waiver of subrogation is inapplicable to Maine Printing and thus does not bar the recovery against Cimino for damages incurred by Maine Printing. The contract bound Willis Realty and Cimino. Maine Printing is not named as a party. Although Robert Willis appended the title "president" after his name, rather than his actual title as a partner in Willis Realty, when signing the contract, the signature line over which Robert Willis signed specifically names Willis Realty as the contracting party. The court correctly concluded that Maine Printing was not a party to the unambiguous contract.[3] The fact that Robert Willis was president of Maine Printing as well as managing partner of Willis Realty does not estop Maine Printing from denying that the waiver of subrogation clause applies to it. *See Anderson v. Commissioner of Dept. of Human Servs.*, 489 A.2d 1094, 1099 (Me. 1985) (estoppel warranted only when misleading conduct of one party induces other party to rely to his detriment).

## III.

### CIMINO IMMUNITY AS IMPLIED CO-INSURED

■ Cimino also contends that it is immune from suit as an implied co-insured under the Royal Globe property insurance policy carried by Willis Realty and Maine Printing. Although an insurer may not sue its own insured for damages covered under the policy, *see* 16 *couch on insurance* § 61.133 (2d ed. 1966), the court did not err in concluding that Cimino was not a co-insured under the Royal Globe policy, and thus was not immune to this subrogation action to recover damages Royal Globe paid to Maine Printing.

In contending that it is a co-insured, Cimino relies on an endorsement to the Royal Globe policy extending the owner's property insurance to cover additions and alterations to the existing building. That endorsement, however, allows the named insureds to undertake renovation or remodeling without invalidating their existing property coverage, and does not inure to the benefit of Cimino to the extent of making Cimino a co-insured. Nor does the Royal Globe policy coverage for damage to the personal property of others within the control of the named insured, also relied on by Cimino to establish itself as a co-insured, do any more than indemnify Willis Realty and Maine Printing for damages for which they would be liable to others. It does not evince any intent to indemnify Cimino. The court was not required to find that Cimino was a co-insured merely because payments made to the named insureds under the policy included the cost of replacing some of Cimino's construction materials and equipment damaged in the collapse. The court's conclusion that Royal Globe is not barred from asserting its claim as to what it paid Maine Printing in subrogation is not error.

The entry is:

Judgment for Willis Realty vacated. Remanded to the Superior Court for entry of

---

**3.** The court further concluded that even if the contract were ambiguous, as Cimino alleges, based on the extrinsic evidence offered at trial, the only parties to the agreement were Willis Realty and Cimino. That finding is amply supported by the evidence.

judgment in favor of Cimino Construction Company. Judgment affirmed in all other respects.

ROBERTS, GLASSMAN and COLLINS, JJ., concurring.

CLIFFORD, Justice, with whom RUDMAN, Justice, joins, dissenting.

I agree with the Court that the trial court correctly determined that Maine Printing was not a party to the contract with Cimino and that Cimino was not a coinsured under the Royal Globe policy. Because I would conclude that the waiver of subrogation provision in the contract was inapplicable to the claims pursued in the names of Willis Realty and Maine Printing, however, I respectfully dissent.

This Court reviews the trial court's decision *de novo*, and construes the contract as a matter of law. The trial court, however, did not decide the case as a matter of law on a motion for summary judgment. Rather, the trial court heard extrinsic evidence to determine the intent of the parties as to whether the waiver of subrogation provision in Article 11.3.6 applied to this action brought by Royal Globe. In the case of this contract that I would conclude is ambiguous, that factual determination should be reviewed for clear error, and I find no such error. *See Titcomb v. Saco Mobile Home Sales, Inc.*, 544 A.2d 754, 757 (Me. 1988) (if contract ambiguous, and relevant extrinsic evidence is resorted to by the court in construing it, the interpretation is a question of fact reviewable on appeal under a clear error standard).

Giving effect to the intent of the parties is the cardinal rule of construction in construing the terms of a contract. *Palmer v. Nissen*, 256 F.Supp. 497, 503 (D.C.Me.1966) (*citing Ames v. Hilton*, 70 Me. 36, 43 (1879)). That intent is to be discerned from the contract itself, "construed in respect to the subject matter, motive and purpose of making the agreement and the object to be accomplished." *Foster v. Foster*, 609 A.2d 1171, 1172 (Me.1992); *see also Cushing v. State*, 434 A.2d 486, 494 (Me.1981).

Under Article 11.3.1[1] of the AIA standard form contract, unless "otherwise provided," the owner is obligated to provide insurance on the entire work at the site, covering the interests of the owner, the contractor, and subcontractors, commonly known as builder's risk insurance.[2] In this case, the parties did provide otherwise, agreeing by letter to a change in Article 11.3.1 to provide that Cimino, the contractor, as opposed to Willis Realty, the owner, would assume the obligation to procure this insurance. Cimino, in fact, did purchase builder's risk insurance pursuant to the terms of the contract. That builder's risk policy, however, was not purchased in time to cover this incident.[3]

Under Article 11.3.6,[4] the parties agreed to waive all claims for damages covered by insurance obtained pursuant to Article 11.3 or "any other property insurance applicable to the Work." Because Cimino did not purchase builder's risk insurance until *after* the date of the wall collapse, there was no insurance procured pursuant to Article

---

**1.** Article 11.3.1 of the contract in this case provides:

> Unless otherwise provided, the owner shall purchase and maintain property insurance upon the entire work at the site to the full insurable value thereof. This insurance shall include the interests of the owner, the contractor, subcontracts, and sub-subcontractors in the work, and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

**2.** On the other hand, the contractor is obligated under the contract to carry liability insurance

for damages "other than to the work itself." Article 11.1.5.

**3.** In addition, by its terms, the policy purchased by Cimino excludes damage to the existing building.

**4.** Article 11.3.6 of the contract provides in pertinent part:

> The Owner and Contractor waive all rights against ... each other ... for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to Paragraph 11.3 or any other property insurance applicable to the Work except such rights as they may have for the proceeds of such insurance held by the Owner, as trustee.

11.3 within the meaning of the waiver as applied to this lawsuit. This Court concludes as a matter of law that the unambiguous intent of the parties to this contract is that the preexisting general business and property liability insurance policy that Willis Realty and Maine Printing (not a party to the contract) maintained with Royal Globe was insurance "applicable to the Work" within the meaning of Article 11.3.6. I disagree.

The "Work" is defined in Article 1.1.3 of the contract as comprising the completed construction required by the contract. The contract provided for the construction of an entirely new building, albeit attached to the existing building. The wall that collapsed was part of the existing building and the damages flowing from that collapse were the result of the harm to the wall and to the business, Maine Printing, housed in the existing building. Although the harm was caused by construction activity, the existing property and the damage to it are separate and distinct from the work.

The insurance contemplated under Article 11.3.6 is the kind of policy purchased by Cimino, the party responsible under the contract for procuring such insurance, albeit too late to cover this incident, insuring the value of the work and including the interests of the owner, the contractor, and all subcontractors. The preexisting "Business Guard Policy" issued by Royal Globe that insured the existing buildings and paid damages to Maine Printing for damaged inventory and lost business, and to Willis Realty for damage to the existing building, on the other hand, is, in my view, insufficiently related to the work to be within the meaning of "insurance applicable to the Work" in Article 11.3.6.

Cimino's expansive definition of the term "work" is belied by the builder's risk policy that it eventually purchased, that, by its terms, excludes damage to the existing building. Although Cimino relies on cases broadly construing the definition of "work" in similar contractual provisions, those cases all involved insurance coverage purchased by the owner pursuant to the owner's obligation under the contract, and al-

most every one of them involved builder's risk insurance designed to indemnify the owner and contractor for damages to the project. Here, on the other hand, Willis Realty, as the owner, had no obligation or intention to procure such insurance; the Royal Globe policy is a general business insurance policy insuring the interests of Willis Realty and its tenant, Maine Printing, in the existing building and is not a builder's risk policy designed to cover the work itself or to benefit Cimino in any way.

In *S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.*, 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (1990), New York's Court of Appeals, in construing a provision similar to the within contract between Willis Realty and Cimino, concluded that the waiver of subrogation clause was intended to include only insurance covering property in which the contractor had an insurable interest, that it barred subrogation only for damages to the work itself, and did not extend to cover all damages flowing from the work. That court's construction of the standard AIA contract gives effect to the contractor's obligation to carry insurance for "damages other than to the work itself," *id.* 557 N.Y.S.2d at 293, 556 N.E.2d at 1100, and when applied to the facts of this case, is persuasive.

Had the parties intended that the contract provision waive all claims against each other to the extent covered by *any* insurance policy, they could have so provided. They did not do so in Article 11.3.6. I would defer to the trial court and affirm it's conclusion that the Royal Globe policy was not insurance "applicable to the Work."